MAGNOLIA PETROLEUM CO. et al. v.
STATE.

No. 9761.

Court of Civil Appeals of Texas. Austin.

Jan. 19, 1949.

Rehearing Denied Feb. 9, 1949.

See also Tex.Civ.App., 218 S.W.2d 852.

Dan Moody, of Austin, and Walace Hawkins, Earl A. Brown, and Chas. B. Wallace, all of Dallas, for Magnolia Petroleum Co.

J. B. Robertson, of Austin, for Millican, Reed & Norman and others.

Smith & Pollard, of Austin, for Ellis Frieden d/b/a F & R Oil Co.

'Wm. E. Remy, of San Antonio, for Tex-America Oil Co. and others.

Hornsby & Kirk and Stanley Hornsby, all of Austin, for F. D. Glass, Jr.

Price Daniel, Atty. Gen., and Fagan Dickson and Burnell Waldrep, Asst. Attys. Gen., for the State.

Arthur Green, of Cuero, for the City of Cuero.

Ralph W. Wofford, of Victoria, for City of Victoria.

Robert A. Miller, of Gonzales, for City of Gonzales.

HUGHES, Justice.

The state sued appellant Magnolia Petroleum Company and other parties, also appellants, who owned or operated oil and gas leases in the Luling and Salt Flat Oil Fields in Caldwell and Guadalupe Counties, for temporary and permanent writs of injunction.

After an extended hearing and the introduction of a mass of evidence, the statement of facts containing 823 pages, the trial court granted a temporary injunction enjoining appellants from "throwing, casting, discharging, or depositing, directly or indirectly, salt water or other polluting substances * * * into the San Marcos or Guadalupe Rivers, or any of their tributaries, or in such proximity * * * that such salt water or polluting substance will reach said streams or any of their tributaries * * *."

This order is appealed from by all appellants.

■ The State's petition was timely excepted to on the ground that it was sworn to by the State Health Officer upon information and belief. This exception was properly overruled notwithstanding Rule 682, Texas Rules Civil Procedure, which provides that no writ of injunction shall be granted except upon a verified petition. Rule 682 repealed but is identical with Art. 4647, R.C.S.1925. Literal compliance with the rule would prohibit granting injunctions upon final trial unless the petition is properly verified. Neither Art 4647 nor Rule 682 has been so construed. Brown v. Munger Farm Co., Tex.Civ.App.,

Ft. Worth, 87 S.W.2d 527; McClellan v. Krebs, Tex.Civ.App., Ft. Worth, 183 S.W.2d 758. The reason for these holdings is that summary relief is not granted upon faith of the sworn allegations of the pleading. This reason applies with equal force to the issuance of a temporary injunction granted, not in summary fashion upon the averments of the petition alone, but upon sworn and competent evidence admitted upon a full hearing. Sound support for this holding is found in the opinion of Chief Justice Hemphill in Eccles v. Daniels, 16 Tex. 136, 137.

Appellant F. D. Glass, Jr., cites Pullen v. Baker, 41 Tex. 419; Clarey v. Hurst, Tex.Civ.App., 136 S.W. 840; Smith v. Banks, Tex.Civ.App., 152 S.W. 449, Writ Ref.; Lane v. Jones, Tex.Civ.App., San Antonio, 167 S.W. 177; Kopplin v. Ludwig, Tex.Civ.App., San Antonio, 170 S.W. 105, and Wilson v. State, Tex.Civ.App., El Paso, 59 S.W.2d 303, as holding that no injunction could issue where the petition was insufficient for want of proper verification. These cases are not in point, for the reason that in each case the relief granted was based solely upon the petition.

The temporary injunction in this case was granted after a full hearing. We assume that the trial court based its order upon the evidence heard, excluding the petition as evidence. The propriety of this order, later to be discussed and determined, will be considered by us in the same manner. Par. (d), Rule 385, Texas Rules Civil Procedure.

Appellant Magnolia Petroleum Company, after its plea of privilege was overruled, desiring to appeal from and supersede that order, filed and the clerk approved a supersedeas bond in the amount fixed by the trial court. This occurred before hearing on the application for temporary injunction, the hearing on which Magnolia timely moved to stay pending the outcome of its venue appeal. This motion was overruled and Magnolia and other appellants assign this as error, contending (a) that an order overruling a plea of privilege may be superseded and (b) that upon the filing and approval of the supersedeas bond the trial court was deprived of the power to grant a temporary injunction.

In our opinion, neither contention is sound.

Rule 385, TRCP, does provide that appeals from interlocutory orders may be taken by filing an appeal or supersedeas bond and Art. 2008, Vernon's Ann.Civ.St., provides that appeals may be taken from orders overruling or sustaining pleas of privilege, but par. (c) of Rule 385 provides that "Where the appeal is from an order sustaining a plea of privilege, transfer of the venue and trial upon the merits shall be suspended pending the appeal."

This rule (c), having special application to venue appeals, prevails over general rules in so far as there may be any inconsistency. Sam Bassett Lumber Co. v. City of Houston, 145 Tex. 492, 198 S.W.2d 879.

Properly construed, par. (c) means that when the appeal is from an order overruling a plea of privilege, such appeal, whether perfected by cost or supersedeas bond, does not suspend trial on the merits pending the appeal. This is so under the rule of statutory construction which implies the negative of that which is affirmed and the affirmative of that which is negatived. 39 Tex.Jur., p. 189. The rule affirming suspension of trial if a plea of privilege is sustained, by implication denies a suspension of trial if the plea be overruled.

In construing that portion of Art. 2008, R.C.S.1925, which provides that, "if the judgment is one sustaining the plea of privilege and an appeal is taken, such appeal shall suspend the transfer of the venue and a trial of the cause pending the final determination of such appeal," the Commission of Appeals held in Smith Bros. Grain Co. v. Windsor & Stanley, 255 S.W. 158, that, "When the plea is overruled, the trial court can at once proceed to trial on the merits." Par. (c) of Rule 385 is in substantially the same language as that part of Art. 2008 just quoted, and should receive and has received the same construction. Pugh v. Childress & Marshall, Tex.Civ.App., Texarkana, 207 S.W.2d 182.

It is true that no case cited to or found by us involves an attempt to supersede a judgment overruling a plea of privilege. The absence of such attempt indicates a long standing construction of the statute

and Rule by the Bar that it could not be done.

If we are incorrect in our holding that an order overruling a plea of privilege may not be superseded, we are nevertheless of the opinion that the trial court is not without power to grant a temporary injunction even though an order overruling a plea of privilege is properly superseded. If an order overruling a plea of privilege is suspended by filing a supersedeas bond, then, as far as the trial court is concerned, there is pending a plea of privilege which appellants contend deprives the court of all power to issue a temporary injunction. This question was squarely presented to the Fort Worth Court of Civil Appeals in Pacific Mid-Continent Corporation v. Tunstill, 159 S.W.2d 908. The opinion was by Chief Justice McDonald and, in our judgment, he effectively and adversely disposed of all the arguments advanced by appellants here. See also opinion by the same court in Boyd v. Crabb, 205 S.W.2d 606, and Story v. Story, 172 S.W.2d 753, reversed 142 Tex. 212, 176 S.W.2d 925. The Supreme Court in the Story case dissolved the temporary injunction on the merits of the case and not because the injunction was granted after a plea of privilege was filed.

We can only add to what has been said in the above authorities that a party against whom injunctive relief may be sought and which cannot be granted without notice, except in extraordinary cases, should not and, in our opinion, does not have the right to destroy the constitutionally given power of district courts to issue writs of injunction by filing a piece of paper called a plea of privilege.

If this were so, then it would not infrequently happen that when the plea of privilege was finally determined there would be nothing to enjoin and nothing to try or transfer.

Appellants complain of the failure of the trial court to sustain a plea in abatement raising the absence and non-joinder of alleged necessary and indispensable parties.

This being an appeal from an interlocutory order granting a temporary injunction we cannot consider the court's action on such plea. Zanes v. Mercantile Bank & Trust Co. of Texas, Tex.Civ.App., Dallas, 49 S.W.2d 922, Writ Ref.

The reasons assigned and findings made by the trial court as its basis for issuance of the temporary writ of injunction are:

"(1) that the defendants and each of them, own and operate leases in either the Luling Oil Field or Salt Oil Field in Guadalupe and Caldwell Counties, Texas, on which there are producing oil wells;

"(2) that these oil fields are in the last stages of depletion and the wells therein are producing large quantities of salt water;

"(3) that the salt water produced from the wells of the defendants is being allowed to flow either directly or indirectly into the San Marcos and Guadalupe Rivers;

"(4) that the San Marcos River converges with the Guadalupe River a few miles north of Gonzales, Texas, and that the residents of Gonzales, Texas, use said river water for domestic and industrial purposes and that the citizens of Gonzales have no other available source of water for domestic and industrial purposes;

"(5) that the inhabitants of Cuero, Texas, and Victoria, Texas, will in the immediate future begin using the waters of the Guadalupe River for domestic and industrial purposes due to the rapid depletion of the water wells from which they presently obtain their supply of water;

"(6) that ranchers and farmers along the Guadalupe and San Marcos Rivers above and below Gonzales use the waters of said rivers for domestic purposes.

"(7) that the pollution of the San Marcos and the Guadalupe Rivers by the defendants from their said oil wells causes the waters of said rivers, and each of them, to contain at times more than 250 parts per million chlorides, which is the standard set by the United States Public Health Service, and when water contains more than 250 parts per million chlorides it becomes unpalatable to the taste and becomes unfit for domestic and industrial uses;

"(8) that the discharging of salt water into the San Marcos and Guadalupe Rivers

by the defendants is harmful to aquatic life in said streams and tributaries and makes it impossible for fish to live in certain parts of said streams;

"(9) that the defendants can dispose of all of the salt water produced by them in the Luling and Salt Flat Fields by the use of injection wells and storage pits, and such methods are both feasible and practicable;

"(10) that the present pollution of the San Marcos and Guadalupe Rivers caused by the defendants discharging salt water therein is in violation of Article 4444, VCS, and Article 698b, VPC, and creates a public nuisance for which the plaintiff has no adequate remedy at law."

The evidence introduced upon the hearing, parts of which will now be briefly summarized, is sufficient to support the above findings.

David F. Smallhorst, an engineer employed by the State Department of Health, testified concerning a survey made by him in 1946 and 1947 concerning conditions existing on the watershed of the Guadalupe and San Marcos Rivers, from which it was determined that from leases operated by some of appellants in the Luling Field approximately 12 million gallons of water per day were emptied into these rivers, which 12 million gallons of water contained 330 tons of chloride. From leases operated in the Salt Flat Field approximately 6 million gallons of water a day were discharged into these rivers which contained 383 tons of chloride.

Tests of the waters of the San Marcos River at Prairie Lea, which is above the Luling and Salt Flat Fields, showed a chlorine content of 14 parts per million chloride. Tests of river water made at points below these fields show: Just below Smith Creek 355 parts per million chloride; at Ottine 817 parts per million chloride.

The San Marcos and Guadalupe Rivers converge just above Gonzales and the water at this point showed 277 parts per million chloride.

C. C. Smith, City Utility Manager of Gonzales, testified that the chlorine content of the water of the Guadalupe River at Gonzales varied from time to time and that the chlorine content exceeded 250 parts per million as follows: 26 days in September, 28 days in October, 24 days in November, 22 days in December, all in 1947, 19 days in January and February, 20 days in March, 26 days in April, 12 days in May, and 20 days in June, all in 1948.

Section 4.22 of the federal standards for drinking water provides:

"The following chemical standards which may be present in natural or treated waters should preferably not occur in excess of the following concentrations where other more suitable supplies are available in the judgment of the certifying authority: chloride (Cl.) should not exceed 250 ppm."

Gonzales is a city of about 6,000 population and its principal water supply is the Guadalupe River and the salty condition of this water has injured various businesses in Gonzales and has caused innumerable complaints.

J. H. Grant, a retail lumberman of Gonzales, testified that the fishing in the Guadalupe River had become progressively worse, that all moss beds were gone, that the vegetation was dead and that all game fishing had disappeared. He stated that the general appearance of the area was that of a wasteland.

There is in the record many affidavits and other evidence showing the harmful effect of salt water intrusion into the San Marcos and Guadalupe Rivers and their tributaries and appellants' (except appellant Frieden) connection therewith and responsibility therefor.

We do not further discuss the evidence because it is not the position of appellants (except Frieden) that the evidence does not show that they are discharging salt water into these rivers, but they contend that they are entitled to discharge some salt water into these rivers and the order is too broad, in that it prohibits the discharge of any salt water therein; that there was not shown such imminent danger or threat of irreparable injury as to authorize the injunction; that the court by its order has destroyed the status existing at the time of trial, has failed to balance the equities between the parties and that Art. 4444, Vernon's Ann.Civ.St., and Art.

698b, Vernon's Ann.P.C., are unconstitutional.

■ Art. 698b is a criminal statute and we need not consider its terms nor validity because we are of the opinion that the injunction was properly issued under Art. 4444, V.A.C.S., and was properly issued independent of any statute. Goldsmith & Powell v. State, Tex.Civ.App., Dallas, 159 S.W.2d 534, Writ Ref., which case was expressly approved by the Supreme Court in Ex parte Genecov, 143 Tex. 476, 186 S.W.2d 225, 160 A.L.R. 1099.

In the Goldsmith case it was held [159 S.W.2d 535]:

"* * * and while the pollution of water courses in this State is expressly condemned by statute, yet, being a public nuisance, the right to abate such nuisance is lodged in the district courts, independent of any statute; * * *."

■ Art. 4444 has been before the courts in several cases and its constitutionality has never been questioned. Newton v. City of Groesbeck, Tex.Civ.App., Waco, 299 S.W. 518; Goldsmith case, supra; Texas Gulf Sulphur Co. v. State, Tex.Civ. App., Galveston, 16 S.W.2d 408; Continental Oil Co. v. City of Groesbeck, Tex. Civ.App., Waco, 95 S.W.2d 714, Writ Dis.; Ex parte Genecov, supra.

In our opinion this article is constitutional as against appellants' contention that it is vague and indefinite. The statute provides, in part:

"No person, firm or corporation, private or municipal, shall pollute any water course or other public body of water, by throwing, casting or depositing or causing to be thrown, cast or deposited any crude petroleum, oil or other like substance therein, or pollute any water course, or other public body of water from which water is taken for the uses of farm livestock, drinking and domestic purposes, in this State, by the discharge, directly or indirectly, of any sewage or unclean water or unclean or polluting matter or thing therein, or in such proximity thereto that it will probably reach and pollute the waters of such water course or other public body of water from which water is taken, for said uses. * * * In so far as concerns the protection of fish and oysters, the Game, Fish and Oyster Commissioner or his deputies, may have jurisdiction in the enforcement hereof."

■ The point that the injunction fails to preserve the status quo is without merit. The status quo was an unpolluted river; not a contaminated stream caused by the wrongful acts of appellants. Alpha Petroleum Co. v. Railroad Commission, Tex.Civ. App., Austin, 59 S.W.2d 374, Writ Dis.

■ We are not dealing with imminent dangers or threats of irreparable injury. We are confronted with actual and long continued pollution of public waters. Appellants say that pollution will diminish as they take preventive measures. This is commendable, but it does not satisfy the law that there be no pollution, and courts are not required to bide their time and wait until the parties see fit to discontinue their unlawful acts.

■ As to balancing equities. There simply are no equities in behalf of anyone who is polluting public waters which are used for domestic purposes.

In Continental Oil Co. v. City of Groesbeck, supra, opinion by the late Supreme Court Chief Justice Alexander when he was on the Court of Civil Appeals, a temporary writ of injunction was issued restraining the oil company from polluting the city's water supply by the discharge of salt water and other obnoxious matters into the Navasota River, the evidence showing that salt water from a leak in the company's salt water line was flowing into a tributary of the river, and the court in affirming issuance of the writ said [95 S. W.2d 715]:

"The above evidence, we think, was sufficient to authorize the trial court, in the exercise of its discretion, to grant the injunction. But if we are mistaken in this respect, the appeal is without merit because the writ does not enjoin the appellant from doing anything that it has a lawful right to do. It is unlawful in this state for any one to pollute any water course or public body of water by the discharge of salt water therein where the water therefrom is used for domestic purposes. Revised Statutes, art. 4444; Ver-

non's Ann.P.C., art. 698a. Since the appellant has no right to pollute the waters of Navasota River and its tributaries, the writ granted in this case in nowise interferes with appellant's lawful rights, and the appeal from the granting of the writ presents no merit."

■ Appellants having no lawful right to discharge or cause the discharge of any salt water into public waters used for domestic purposes, the order of the trial court was not too broad.

Appellant Ellis Frieden, d/b/a/ F. & R. Oil Company, while admitting that the evidence shows that on May 4, 1948, his leases were discharging salt water, testified that at the time of trial, because of remedial steps which he had taken, no salt water was escaping from his leases. The nature of this suit is such that we do not believe that the trial court was required to assume or find from the evidence that because this appellant had desisted in its unlawful practices before trial that there was present such guarantee or evidence of permanence in the arrangements made by Frieden to take care of the salt water from his leases, that he should not be placed within the ban of the injunction. In any event his appeal is without merit under the holding in Continental Oil Co. v. City of Groesbeck, supra.

Appellants Tex-America Oil Company, Horner & Lowe, Wisner & Wisner, and Wiegand Brothers, residents of Bexar County, filed pleas of privilege which were overruled and they appeal from this order as well as from the order granting the temporary writ of injunction.

The record as to the order on the pleas of privilege is the same as that considered by us in Magnolia Petroleum Company v. State, Tex.Civ.App., 218 S.W.2d 852, decided January 12, 1949, and for the reasons given in such opinion the order overruling such pleas of privilege is reversed and the cause remanded.

The judgment of the trial court granting a temporary injunction is affirmed.

Affirmed in part, reversed and remanded in part.

ARCHER, C. J., not sitting.

Motions Nos. 10,602, 10,605, 10,606, 10,607, 10,608, and 10,609.

On Motions for Rehearing.

Appellants' motions for rehearing are overruled.

Appellee's motion for rehearing relates solely to our action in reversing and remanding the judgment of the trial court in so far as it overruled pleas of privilege filed by appellants who reside in Bexar County.

■ The only new question raised in this motion is that the statement of facts filed in this cause does not contain the evidence heard when the pleas of privilege were disposed of by the trial court. This is correct.

Our cause No. 9760, styled Magnolia Petroleum Company v. State of Texas, Tex.Civ.App., 218 S.W.2d 852, decided January 12, 1949, and this cause grew out of one and the same lawsuit. The record in cause No. 9760 was proper in so far as it showed an appeal duly perfected by the Magnolia from the order overruling its plea of privilege.

As to the Bexar County appellants who sought to appeal from the order overruling their pleas of privilege, the records in causes Nos. 9760 and 9761, respectively, show:

In cause No. 9760 the statement of facts contained the evidence heard on the pleas of privilege. The transcript in No. 9760 did not contain an order overruling these pleas of privilege and did not contain any appeal bond by the complaining Bexar County appellants.

The transcript in cause No. 9761 contained an order overruling the pleas of privilege of the Bexar County appellants. Originally this transcript contained only an appeal bond by these appellants, which recited only that the appeal was taken from the order granting a temporary injunction. We have heretofore permitted this appeal bond to be amended so as to include an appeal from the order overruling their pleas of privilege.

While, as indicated, the evidence heard on the pleas of privilege of the Bexar County appellants is not in the statement

of facts in this case, we considered such evidence, which is found in the statement of facts in cause No. 9760, in disposing of such appeals in our original opinion herein.

Rule 428, Texas Rules Civil Procedure, authorizes us, on our own initiative, to direct the Clerk of the trial court to transmit to this court any matter which may be omitted from the transcript or statement of facts.

The matter omitted is the evidence heard on the pleas of privilege of the Bexar County appellants. This evidence is in the statement of facts on file in this court in cause No. 9760. We will not, unless it is made to appear that some injury or injustice is otherwise done, require the Clerk below to do a useless and expensive thing and require him to send up this omitted evidence which we have before us under proper certificate in cause No. 9760, and which we have already considered. Instead, we direct and order that such evidence be included in the statement of facts in this case, by reference.

Appellee's motion for rehearing is overruled.

Motions overruled.