# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00725-CV

**City of San Antonio Acting by and through City Public Service Board n/k/a CPS Energy, Appellant**

**v.**

**Bastrop Central Appraisal District and Chief Appraiser Mark Boehnke, Appellees**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT NO. 26,331, HONORABLE REVA TOWSLEE-CORBETT, JUDGE PRESIDING

## O P I N I O N

The City of San Antonio, acting by and through the City Public Service Board of San Antonio ("CPS Energy") filed a petition for writ of mandamus in the trial court, asking the court to compel the Bastrop Central Appraisal District (BCAD) and BCAD's chief appraiser Mark Boehnke to act on the application CPS Energy filed requesting an open-space agricultural appraisal for the years 1999 through 2002 of more than 6,000 acres of real property in Bastrop County. Specifically, CPS Energy asked the trial court to compel BCAD to approve, disapprove, or deny the application. *See* Tex. Tax Code Ann. § 23.57(a) (West 2007). The trial court denied CPS Energy's petition, and CPS Energy appeals. We affirm the trial court's judgment.

## BACKGROUND

In the 1950s, CPS Energy, a municipally owned utility company, began acquiring land in Bastrop County with the stated purpose of extracting lignite to use in generating electricity for San Antonio residents. By 2003, CPS Energy had acquired more than 6,000 acres in Bastrop County. From the 1950s through 2003, all of the land was considered tax exempt based on its use for public purposes. *See id*. § 11.11(a) (West 2007). However, in 2003, BCAD discovered that CPS Energy had leased its lignite reserves to Alcoa, Inc. CPS Energy signed the lease with Alcoa on December 28, 1998. Under the terms of the lease, Alcoa is entitled "to mine, extract, and remove" one-hundred percent of the lignite "for the exclusive use and benefit of Alcoa."[1] Thus, BCAD revoked the land's tax-exempt status, determining that the land was no longer being used for public purposes, and applied the revocation retroactively, taxing the land at full-market value from 1999 onward. *See id*. § 11.43(i) (West 2007). CPS Energy filed a protest of BCAD's revocation with the Bastrop County Appraisal Review Board (ARB). ARB denied CPS Energy's protest, and CPS Energy appealed to the trial court. The trial court granted summary judgment affirming BCAD's revocation of CPS Energy's public-use exemption. CPS Energy appealed to this court, and we affirmed the trial court's judgment. *See City of San Antonio v. Bastrop Cent. Appraisal Dist.*, No. 03-06-00081-CV, 2006 Tex. App. LEXIS 9051 (Tex. App.—Austin Oct. 19, 2006, pet. denied) (mem.op., not designated for publication).

---

[1] The lease expires on December 31, 2013, although Alcoa has the right to extend the term of the lease until 2043.

2

In August 2003, while CPS Energy was still litigating the revocation of its public-use exemption, it filed an application requesting an open-space agricultural appraisal for the years 1999 through 2003. *See id*. §§ 23.51, 23.54 (West 2007). Because such an application must be filed before May 1 of the year in which the appraisal is requested, CPS Energy's application was untimely for all five years. *See id*. § 23.54(d). BCAD accepted the application for the year 2003 and processed it by considering whether the land met the substantive requirements for an open-space agricultural appraisal in that year. Initially, BCAD denied the application for 2003 but requested more information. In response, CPS Energy sent the requested information and a notice of protest, complaining of BCAD's failure to deliver "notices" of the land's appraised value for 1999 through 2002. Ultimately, BCAD granted CPS Energy's application for an open-space agricultural appraisal for 2003 only.

In January 2004, CPS Energy sent a letter to ARB stating that neither ARB nor BCAD had scheduled a hearing on CPS Energy's protest and requesting that they do so. BCAD responded in a letter stating that BCAD received CPS Energy's protest and assuring CPS Energy that it would be scheduled for a hearing. Soon after, CPS Energy paid property taxes under protest for 1999 through 2003. In May 2004, CPS Energy sent a letter to BCAD complaining that BCAD still had not scheduled a hearing on CPS Energy's protest and stating that CPS Energy would file a mandamus action if BCAD did not schedule a hearing promptly. BCAD responded in a letter stating that "[t]he want of scheduling a hearing for the appraisal review board to this point does not constitute any form of denial of the protest." The letter also stated that BCAD was still in the process of evaluating the information provided by CPS Energy, that there would be a hearing in the

3

near future, and that CPS Energy's protest would be among the first addressed at the hearing. Ultimately, BCAD never took action on CPS Energy's application for the years 1999 through 2002, and CPS Energy filed a petition for writ of mandamus in the trial court to compel BCAD to approve, disapprove, or deny the application. The trial court denied CPS Energy's petition, and this appeal followed.

## MANDAMUS RELIEF

A writ of mandamus is an extraordinary remedy that will issue only to compel a public official to perform a ministerial act. *Anderson v. Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991); *City Council of Austin v. Save Our Springs Coalition*, 828 S.W.2d 340, 342 (Tex. App.—Austin 1992, no writ). An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. *Anderson*, 806 S.W.2d at 793; *Save Our Springs*, 828 S.W.2d at 342. A writ of mandamus will not issue to compel a public official to perform an act that involves an exercise of discretion. *Anderson*, 806 S.W.2d at 793. An original proceeding for a writ of mandamus initiated in the trial court is a civil action subject to trial and appeal on substantive law issues and the rules of procedure as any other civil suit. *Id*. at 792 n.1.

## DISCUSSION

CPS Energy contends that the trial court erred in denying its petition for writ of mandamus for three reasons[2]: (1) BCAD has a statutory duty to act on every application, even

---

[2] CPS Energy also contends that the tax code does not provide CPS Energy with a right to protest BCAD's failure to act on its application because BCAD's failure to act does not constitute

4

untimely ones, filed for an open-space agricultural appraisal; (2) BCAD's failure to act on CPS Energy's untimely application violates CPS Energy's due-process rights; and (3) BCAD should be barred from claiming that it does not have a duty to act on untimely applications because its previous actions indicate otherwise.

***Statutory Construction***

In its first point of error, CPS Energy contends that section 23.57(a) of the tax code requires Chief Appraiser Mark Boehnke to approve, disapprove, or deny every application filed for an open-space agricultural appraisal, even those applications that are filed past the deadline. *See* Tex. Tax Code Ann. § 23.57(a). Interpreting the legislative intent of section 23.57 is a matter of statutory construction, which we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). The rules of statutory construction are well-settled. First, we must look to the plain and common meaning of a statute's words. Tex. Gov't Code Ann. § 311.011 (West 2007); *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003); *General Motors Corp. v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007, no pet.). Unless a statute is ambiguous, courts abide by the clear language of the statute and enforce it as written. *Texas Workers' Comp. Comm'n v. Continental Cas. Co.*, 83 S.W.3d 901, 905 (Tex. App.—Austin 2002, no pet.). We must construe statutes as written, and if possible, ascertain legislative intent from the statute's language. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). Every word of a statute is presumed to have been used for a

---

an "action" as is required by the tax code before a property owner can protest. Because we conclude that BCAD did not have a duty to act on CPS Energy's untimely application and that BCAD's failure to act on the application did not violate due process, we need not decide whether BCAD's failure to act triggered BCAD's right to protest. *See* Tex. R. App. P. 47.1 (requiring opinions to be as brief as practicable in addressing issues necessary to final disposition of appeal).

5

purpose, and every word excluded is presumed to have been excluded for a purpose. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 628 (Tex. 2008) (quoting *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)). In addition, rather than considering a statute's isolated provisions, we must consider the statute as a whole. *Wilkins*, 47 S.W.3d at 493. We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it may be susceptible to such a construction standing alone. *Id*. We must presume that the legislature intends an entire statute to be effective and that it intends a just and reasonable result. *Id*.

In reviewing the entire statute, we find four provisions that are relevant in determining the intent of the legislature with regard to a chief appraiser's duty to act on untimely applications. The first provision, section 23.57(a), explains the actions that should be taken on applications, stating the following:

> (a) The chief appraiser shall determine separately each applicant's right to have his land appraised under this subchapter. After considering the application and all relevant information, the chief appraiser shall, as the law and facts warrant:
>     (1) approve the application and allow appraisal under this subchapter;
>     (2) disapprove the application and request additional information from the applicant in support of the claim; or
>     (3) deny the application.
> Tex. Tax Code Ann. § 23.57(a).

The second provision, section 23.54(d), provides the deadline for filing applications, stating that "[t]he [application] form must be filed before May 1. However, for good cause the chief appraiser may extend the filing deadline for not more than 60 days." *Id*. § 23.54(d). The third provision, section 23.54(e), explains the consequence of filing a late application as follows: "If a person fails

6

to file a valid application on time, the land is ineligible for appraisal as provided by this subchapter for that year." *Id*. § 23.54(e). Although land is ineligible for appraisal if the application is filed late, the issue remains as to whether the chief appraiser has a duty to at least deny the application based on untimeliness so that the applicant can file a protest in response. In this case, Boehnke simply took no action on CPS Energy's application with regard to the years 1999 through 2002.

We conclude that the fourth relevant provision, section 23.541(a), settles the issue. Section 23.541(a) states that "[t]he chief appraiser shall accept and approve or deny an application for appraisal under this subchapter after the deadline for filing it has passed if it is filed before approval of the appraisal records by the appraisal review board." *Id*. § 23.541(a) (West 2007). Properly construed, section 23.541(a) means that the chief appraiser need not accept and need not approve or deny a late application filed after the appraisal records are approved. *See Magnolia Petroleum Co. v. State*, 218 S.W.2d 855, 857 (Tex. Civ. App.—Austin 1949, writ ref'd n.r.e.) (stating that affirmative words in statute imply negative of what is not affirmed). In this case, Boehnke testified that the appraisal records for the years 1999 through 2002 were approved in July of each of those years. CPS Energy filed its application in August 2003. Thus, Boehnke was under no duty to accept the application for 1999 through 2003 nor was he under a duty to approve or deny it.[3] *See* Tex. Tax Code Ann. § 23.541(a); *Magnolia Petroleum*, 218 S.W.2d at 857. Accordingly, we overrule CPS Energy's first point of error.

---

[3] CPS Energy argues that *Cooke County Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 728 (Tex. App.—Fort Worth 2004, no pet.) shows that section 23.541(a) does not prohibit an appraisal district from acting on untimely applications. However, we need only decide whether the section *imposes a duty* on an appraisal district to act on untimely applications, not whether it *prohibits* the district from doing so. Further, *Teel* is distinguishable from this case because in *Teel*, the appraisal district acted on the property owner's late-filed application and did not raise the issue of untimeliness until it did so to challenge the trial court's jurisdiction after the property owner filed suit. In this case, we address an entirely different set of circumstances in which an appraisal district never acted on an untimely application in the first place.

***Due Process***

In its second point of error, CPS Energy contends that Boehnke's failure to take action on the application violates CPS Energy's due-process rights. In cases involving taxation, Texas courts have held that due process is satisfied if a taxpayer is given an opportunity to be heard before an assessment board at some stage of the proceedings. *Sondock v. Harris County Appraisal Dist.*, 231 S.W.3d 65, 70 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Dallas County Appraisal Dist. v. Lal*, 701 S.W.2d 44, 47 (Tex. App.—Dallas 1985, writ ref'd n.r.e.); *Texas Pipeline Co. v. Anderson*, 100 S.W.2d 754, 762 (Tex. Civ. App.—Austin 1937, writ ref'd). The tax code provides property owners with the right to protest an appraisal district's determination and the right to obtain a hearing on the protest. *See* Tex. Tax Code Ann. §§ 41.41, 41.45 (West 2007). The protest provisions in the tax code have been held to satisfy due process. *See Dolenz v. Dallas Cent. Appraisal Dist.*, 259 S.W.3d 331, 334 (Tex. App.—Dallas 2008, pet. denied); *Tarrant Appraisal Dist. v. Gateway Ctr. Assoc., Ltd.*, 34 S.W.3d 712, 715-16 (Tex. App.—Fort Worth 2000, no pet.).

CPS Energy relies heavily on *Harris County Appraisal Dist. v. General Elec. Corp.*, 819 S.W.2d 915, 920 (Tex. App.—Houston [14th Dist.] 1991, writ denied) in arguing that due process requires BCAD to act on untimely applications. However, *General Electric* is distinguishable from this case. In *General Electric*, the appraisal district failed to give the property owners a hearing on their protest even though the property owners filed a timely protest, and the court held that the appraisal district's failure to schedule a hearing when the property owners fully complied with the tax code deprived the property owners of due process. Here, CPS Energy did not file a timely application in the years 1999 through 2002. If it had, it would have been entitled to participate in the procedures established for protests, just as the property owners in *General Electric*.

8

CPS Energy attempts to justify its failure to file a timely application by arguing that it had no reason to file for an open-space agricultural appraisal in the years 1999 through 2002 because it was already receiving a more beneficial public-use appraisal of the land and did not receive notice of the retroactively revoked public-use appraisal until 2003. However, if CPS Energy was using the land for agricultural purposes from 1999 through 2002 as it now claims, it had every reason to file an application for an open-space agricultural appraisal and notify the appraisal office that it was no longer using the land for public purposes beginning in 1999. *See* Tex. Tax Code Ann. § 11.43(g) (West 2007) (stating that property owners must notify appraisal office when they are no longer entitled to exemption). Even if CPS Energy was under the impression that it was still using all or some of the land for public purposes, nothing prevented it from also seeking an open-space agricultural appraisal at the same time. In fact, during the hearing in the trial court, BCAD introduced evidence showing that Texas A&M University owned property for which it received both the public-use and open-space agricultural appraisals in 2001 and 2002. Thus, CPS Energy had the right to file a timely application for an open-space agricultural appraisal in the years 1999 through 2002, and if it had done so, it would have been entitled to use the procedures established for protests. Instead, it chose not to participate in the application process until after it learned that it lost its public-use exemption in 2003. There is no due-process violation where property owners choose not to take advantage of the opportunities available to them. *See MAG-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 631-32 (Tex. App.—Austin 2005, pet. denied); *Gateway Ctr. Assoc.*, 34 S.W.3d at 715-16. Accordingly, we conclude that BCAD's inaction on CPS Energy's untimely

9

application for an open-space agricultural appraisal for the years 1999 through 2002 did not violate due process. We therefore overrule CPS Energy's second point of error.

### BCAD's Inconsistent Positions

In its third point of error, CPS Energy contends that BCAD should be barred from claiming that it does not have a duty to act on untimely applications when its previous actions indicate otherwise.[4] In support of its argument, CPS Energy points to two of BCAD's allegedly inconsistent previous actions: (1) BCAD's letters to CPS Energy indicating that a hearing would be scheduled on CPS Energy's protest and that a decision had not yet been made on CPS Energy's application; and (2) BCAD's acceptance and approval of CPS Energy's application with regard to 2003 even though the application was filed past the deadline. CPS Energy's argument seems to be based on principles of estoppel. However, the doctrine of estoppel generally does not apply against governmental entities. *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835-36 (Tex. 1970); *Tourneau Houston, Inc. v. Harris County Appraisal Dist.*, 24 S.W.3d 907, 910 (Tex. App.—Houston [1st Dist.] 2000, no pet.); Tex. Tax Code Ann. § 6.01(c) (West 2007) ("An appraisal district is a political subdivision of the state."). Although estoppel may be applied against a governmental entity in exceptional circumstances to prevent manifest injustice, *see Prasifka*, 450 S.W.2d at 836, CPS Energy has not demonstrated that this is such a case. Accordingly, we overrule CPS Energy's third point of error.

---

[4] CPS Energy also raises arguments in this point of error that we have previously addressed in this opinion. Because we have already addressed the arguments, we need not do so again here. *See* Tex. R. App. P. 47.1.

10

## CONCLUSION

Because we conclude that (1) BCAD had no statutory duty to act on CPS Energy's untimely application for an open-space agricultural appraisal; (2) BCAD's inaction on CPS Energy's untimely application did not violate CPS Energy's due-process rights; and (3) BCAD's previous actions with regard to CPS Energy's untimely application do not bar it from taking its current position, we affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed:   January 16, 2009

11