# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

<hr>

## NO. 03-06-00002-CV

<hr>

**Texas Court Reporters Certification Board and Michele Henricks, as Director of the Court Reporters Certification Board, Appellants**

**v.**

**Esquire Deposition Services, L.L.C., Appellee**

<hr>

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. GN503367, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

<hr>

## O P I N I O N

The Texas Court Reporters Certification Board (the "Board") set a hearing on a disciplinary complaint against Esquire Deposition Services, L.L.C. ("Esquire") alleging that Esquire provided court reporting services during a December 2003 deposition pursuant to a long-term volume discount arrangement that violated statutes and rules governing Texas court reporting firms. Esquire sued the Board and its director, Michele Henricks, alleging that the Board lacked statutory authority to regulate or prohibit "long term discounts in contracts by court reporters and court reporting firms" and seeking declaratory and injunctive relief. The Board and Henricks filed a plea to the jurisdiction, which the district court denied. The Board appeals the district court's order

denying its plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(8) (West Supp. 2006).[1] We reverse the district court's order and dismiss Esquire's suit for want of jurisdiction.

## STANDARD OF REVIEW

The subject matter jurisdiction of a trial court may be challenged through a plea to the jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The determination of whether a trial court has subject matter jurisdiction begins with the pleadings. *See Miranda*, 133 S.W.3d at 226. The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Whether the pleader has met this burden is a question of law that we review de novo. *Id.* We construe the pleadings liberally and look to the pleader's intent. *Id.*

If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue

---

[1] Henricks has joined in this appeal. Esquire has filed a motion to dismiss Henricks's interlocutory appeal on the grounds that she is not a "governmental unit" authorized to take an interlocutory appeal from the denial of a plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2006) (authorizing interlocutory appeal from order granting or denying plea to jurisdiction by "governmental unit" as defined in Texas Tort Claims Act), § 101.001(3) (West 2005) (defining "governmental unit"); *see also Texas A&M Univ. Sys. v. Koseoglu*, 167 S.W.3d 374, 378 (Tex. App.—Waco 2005, pet. granted). We need not reach that question here. Because Esquire has sued Henricks solely in her official capacity as director of the Board, our disposition of the Board's appeal also controls the district court's jurisdiction over Esquire's claims against Henricks. We accordingly dismiss both Henricks's appeal and Esquire's motion as moot.

is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226-27; *Elgin Indep. Sch. Dist. v. R.N.*, 191 S.W.3d 263, 272 (Tex. App.—Austin 2006, no pet.). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Miranda*, 133 S.W.3d at 227.

A defendant may also challenge the jurisdictional facts alleged by the plaintiff through the process described in *Miranda*. *See Miranda*, 133 S.W.3d at 227 (citing *Bland*, 34 S.W.3d at 555). When a plea to the jurisdiction challenges the existence of facts alleged by the pleader to establish the trial court's subject matter jurisdiction, the trial court must consider relevant evidence submitted by the parties. *Bland*, 34 S.W.3d at 555. Here, the Board and Henricks did not challenge the jurisdictional facts alleged by Esquire, nor did they introduce jurisdictional evidence. Instead, they challenged only the sufficiency of Esquire's pleadings. Thus, we take as true the facts alleged in Esquire's pleadings and construe them liberally in favor of jurisdiction. *Id.* at 226.

Additionally, although the Board did not present jurisdictional evidence, Esquire did attach evidence to its pleadings, and we may consider it in resolving the jurisdictional challenges the Board has raised. *Bland*, 34 S.W.3d at 555 ("[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.").

**PLEADINGS AND JURISDICTIONAL EVIDENCE**

Esquire is a national court reporting firm. It is registered in Texas and has eight offices statewide. Esquire's factual allegations center on a disciplinary complaint filed against it by Henricks, in her capacity as director of the Board. To place these allegations in context, it is helpful

3

first to briefly review the statutes governing the Board's regulatory and disciplinary powers over court reporting firms.

**Regulatory framework**

Chapter 52 of the government code regulates the business and practice of court reporting in the State of Texas, including establishing certification, education, and conduct requirements for court reporters and court reporting firms. Tex. Gov't Code Ann. §§ 52.001-.059 (West 2005). The Board is a state agency, administratively attached to the Office of Court Administration of the Texas Judicial System, whose statutory charges include administering and enforcing chapter 52, administering examinations and other requirements related to reporter certification, prescribing educational programs, and "the executive functions necessary to carry out the purposes of this chapter under rules adopted by the supreme court." *Id*. §§ 52.013-.0131 (West 2005). The supreme court appoints the Board, and "may adopt rules consistent with this chapter," including rules governing the certification and conduct of court reporters and the registration and conduct of court reporting firms. *Id*. §§ 52.002, .011. The Board does not have its own rule-making authority.

To practice court reporting, a person must be certified by the supreme court. *Id*. § 52.021(a)-(b). To obtain court-reporter certification, a person must file an application with the Board, pass an examination, and comply with other requirements of the statute and rules. *Id*. §§ 52.0211-.026. The Board certifies each qualified applicant's name to the supreme court, which issues the formal certification. *Id*. § 52.024. Court reporting firms must also register with the Board,

4

and "[r]ules applicable to a court reporter are also applicable to a court reporting firm." *Id*. §§ 52.021(h)-(i), 52.0255.

The Board is also authorized—and required— to take disciplinary action against court reporters and court reporting firms. *Id*. §§ 52.029, 52.0295. Section 52.0295(a) is addressed to court reporting firms, and provides that the Board "shall reprimand, assess a reasonable fine against, or suspend, revoke, or refuse to renew the registration of a shorthand reporting firm or affiliate office for" any of twelve enumerated grounds that conclude with "other sufficient cause." *Id*. § 52.0295(a). Among these disciplinary grounds is:

> unprofessional conduct, including a pattern of giving directly or indirectly or benefitting from being employed as a result of giving any gift, incentive, reward, or anything of value to attorneys, clients, or their representatives or agents, except for nominal items that do not exceed $100 in the aggregate for each recipient each year.

*Id*. § 52.0295(a)(9). However, the legislature has provided that "nothing in Subsection (a)(9) [the "unprofessional conduct" prohibition] shall be construed to define providing value-added business services, including long-term volume discounts, such as the pricing of products and services, as prohibited gifts, incentives, or rewards." *Id.* § 52.0295(b).

On the other hand, the legislature has prohibited, as a separate disciplinary ground, "entering into or providing services under a prohibited contract described by Section 52.034." *Id.* § 52.0295(a)(10). Section 52.034 defines "prohibited contracts" in relevant part as "any contractual agreement, written or oral, exclusive or nonexclusive," that "undermines the impartiality of the court reporter," "requires a court reporter to provide any service not made available to all parties to an action," or "gives or appears to give an exclusive advantage to any party." *Id.* § 52.034(a)(1), (3)-(4).

5

Procedurally, the Board's disciplinary process is triggered by the filing of a complaint against a court reporter or court reporting firm by a person with personal knowledge of the alleged violation, which may include the Board or a court of this state. *Id.* § 52.027(a), (c).[2] If, after receiving a complaint, the Board "believes that a hearing on the complaint is advisable," it is required to set a hearing not later than the 30th day after the date the Board received the complaint. *Id.* § 52.028(a). Immediately after setting the hearing date, the Board must give notice to the subject reporter or firm, stating "the cause of any contemplated disciplinary action" and the hearing time and place. *Id.* § 52.028(b).

At the hearing, the Board shall apply "the general rules of evidence applicable in a district court" in determining whether a violation occurred, and "shall produce a written summary of the evidence before it and a written finding of facts." *Id.* §§ 52.028(d), .028(g), .029(a), .0295(a). If it finds a ground for discipline against a court reporting firm, the Board is authorized to "reprimand, assess a reasonable fine against, or suspend, revoke, or refuse to renew the registration of" the firm. *Id.* § 52.0295; *see also id.* § 52.0321 (authorizing administrative penalties). An aggrieved court reporter or court reporting firm may appeal a disciplinary action of the Board to district court. *Id.* § 52.030. This appeal shall be by trial de novo. *Id.*

**The complaint against Esquire**

The Board's present actions against Esquire stem from an earlier complaint that a certified court reporter, Donna Collins, filed against Esquire and one of its reporters alleging that Esquire had committed "unprofessional conduct" by failing to timely disclose, prior to a December

---

[2] The complainant must also execute a complaint form provided by the Board and attach any "pertinent documentary evidence to the form." Tex. Gov't Code Ann. § 52.027(a)(2)-(4) (West 2005).

2003 deposition, the existence of a contract under which Esquire had agreed to provide services to one of the parties to a lawsuit. *See Standards & Rules for Certification of Certified Shorthand Reporters* § IV(B)(4) (requiring disclosure of "existing or past financial, business, professional, family or social relationships, including contracts for court reporting services, which might reasonably create an appearance of partiality."). Michael E. Jarvis, Esquire's general counsel, filed a written response to Collins's complaint disputing that the disclosure requirement applied to court reporting firms, as opposed to individual reporters who had a relationship requiring disclosure. Jarvis went on to assert that "the mere fact that Esquire has provided competitive rates to a party" did not create an appearance of partiality that would require disclosure under the rule. He observed that the legislature had explicitly excluded from prohibited "unprofessional conduct" "value-added business services, including long-term volume discounts, such as the pricing of products and services." Tex. Gov't Code Ann. § 52.0295(a)(9), (b). Jarvis also pointed out that the legislature had restricted the supreme court's power to adopt "rules restricting advertising or competitive bidding by a [reporter or firm] except to prohibit false, misleading, or deceptive practices." *See id.* § 52.003.

In response to Jarvis's letter, Collins amended her complaint to allege that Esquire had entered into a "prohibited contract" in violation of section 52.034. *See id.* § 52.034.[3] At a preliminary hearing, the Board directed its staff to file a complaint concerning the issues Collins had

---

[3] Collins also added an allegation that Esquire had sought to circumvent Texas law by cancelling depositions and rescheduling them through out-of-state offices. This allegation was later replicated in the complaint Henricks filed and was originally a subject of Esquire's lawsuit. The Board has since dismissed this allegation, and the parties agree that Esquire's claims relating to it are moot.

raised because Collins lacked the required personal knowledge of the violations she had alleged.[4]

The Board dismissed the allegation regarding untimely disclosure, after which Henricks filed the

complaint that is the focus of Esquire's suit.

The complaint filed by Henricks cites excerpts from Jarvis's letter and alleges:

> The disclosure signed by the court reporter states, "Please be advised that Esquire Deposition Services has entered into a volume-related discount fee structure with a party in this lawsuit." If Esquire Deposition Services (1) negotiated directly with a party litigant and (2) i[t] negotiated for all future litigation and not for this specific case only, this is a violation of prohibited contracts under Section 52.034 of the Government Code.
>
> It appears that Esquire may negotiate volume discounts in exchange for all future work which is not permissible and does not fall under the definition of competitive bidding. A volume discount is permissible only when negotiated on a specific case, but it must be disclosed to all parties. Competitive bidding for depositions in a particular case can be accomplished by contacting several reporting firms and asking them to bid on a volume of depositions over a period of time. A long-term volume discount handled in such a manner would not be a prohibited gift, incentive or reward.

The complaint referenced the following statutory prohibitions and rules applicable to court reporting

firms:

- Tex. Gov't Code Ann. § 52.0295(a)(2) (prohibiting "dishonesty" by court reporting firms).

- Tex. Gov't Code Ann. § 52.0295(3)-(4) (prohibiting ordering, or failing to mitigate, employee conduct that court reporting firm's officers or managers know or should know violates chapter 52).

---

[4] In its pleadings, Esquire questioned whether Henricks had been authorized by the Board to initiate the complaint regarding long-term volume discounts. On appeal, Esquire does not appear to press this allegation other than to state, in a footnote, that although the Board is authorized to file disciplinary complaints, *id.* § 52.027(c), "it is far from clear that the Board is authorized to simply adopt a complaint filed by the staff member, which in this case was adopted from a complaint filed by a third party without personal knowledge."

- Tex. Gov't Code Ann. § 52.0295(9) (prohibiting "unprofessional conduct").

- Tex. Gov't Code Ann. § 52.0295(b) (excluding from "unprofessional conduct" under subsection (a)(9) "providing value-added business services, including long-term volume discounts, such as the pricing of products and services, as prohibited gifts, incentives, or rewards.").

- Tex. Gov't Code Ann. § 52.0295(10) (prohibiting court reporting firms from entering into or providing services under a "prohibited contract" under section 52.034).

- Tex. Gov't Code Ann. § 52.034 (defining "prohibited contracts").

- Tex. Gov't Code Ann. § 52.0295(12) ("other sufficient cause" for disciplining a court reporting firm).

- Tex. Gov't Code Ann. § 52.021(i) (providing that rules applicable to a court reporter are also applicable to a court reporting firm).

- *Standards & Rules for Certification of Certified Shorthand Reporters* § IV(B)(4) (requiring disclosure of "existing or past financial, business, professional, family or social relationships, including contracts for court reporting services, which might reasonably create an appearance of partiality"), (6) (failing to charge all parties and attorneys to the action the same price for services performed in an action), and (7) (failure to disclose an itemization of all rates and charges to all parties or their attorneys).

- Tex. Gov't Code Ann. § 52.003 (prohibiting supreme court from adopting rules restricting competitive bidding, subject to sections 52.021(i), 52.0295, 52.034, and "any rules related to ethics or professional conduct promulgated by the supreme court").

The Board set a formal hearing on its complaint for January 28, 2006.

Esquire also emphasizes that during the same period in which the Board was deciding to prosecute a complaint against it, the Board also proposed rules to the supreme court that would define "prohibited conduct related to contracting issues." These proposed rules, which were attached to Esquire's petition, included explicit prohibitions against contractual arrangements under which court reporters or court reporting firms establish rates and terms for court reporting services that

9

extend beyond a single case or proceeding, place a court reporter on any list of preferred providers of court reporting services after reaching an agreement specifying prices or other terms upon which future court reporting services will be provided, prohibit or restrict the discretion of the noticing attorney from using the court reporter of the attorney's choice, fail to offer comparable services to all parties in the litigation, or allow the court reporter to deal directly with a party at interest except to provide invoices. The proposed rules exclude "situations where fees or special services may be negotiated, provided that they are the same for all parties and are negotiated on a case-by-case basis" and governmental entities obligated to obtain court-reporter services on a long-term basis through competitive bidding.[5] To date, the supreme court has not adopted the Board's proposed rules.

**Esquire's claims**

In advance of the formal hearing date on the Board's complaint against Esquire, Esquire filed its suit in district court against the Board and Henricks, in her capacity as the Board's director. Esquire pleads that "[a]s it stands, the practice of negotiating long-term volume discounts is not conduct that is prohibited by law or any regulation of the Board. Otherwise, there would not have been the need for the Board to submit a rule to the Texas Supreme Court." Esquire alleges that

---

[5] Esquire states that the Board's decision to adopt these rules was preceded by a three-hour public hearing with "significant public comment." The transmittal letter from the Board's chair to the supreme court summarizes the debate. "The primary concern expressed by those supporting the changes was that 'bulk' contracting by court reporters may create an appearance of partiality," that there was "confusion about the exact types of contractual arrangements that are prohibited," and that without the explicit prohibitions, "contractors may continue to take advantage of this uncertainty." "The primary concern expressed by those opposing the changes was . . . anti-competitive effect," that the contracting practices in question had lowered prices and increased competition and were already regulated fully by section 52.034 of the government code, that the proposed rule would violate antitrust laws, and that section 52.003 prohibited the supreme court from enacting rules on that issue.

10

the Board is acting outside its statutory authority by seeking (1) to prohibit contracts "that are not prohibited by any current statute or rule" and (2) to "end-run" the supreme court's rule-making authority by attempting to enforce its proposed rules as if the court had adopted them. Esquire requested declarations under the Uniform Declaratory Judgments Act (UDJA) that "in seeking to prohibit long term discounts in contracts by court reporters and court reporting firms, the Board is acting in an *ultra vires* manner and outside of its statutory jurisdiction." *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1997 & Supp. 2006). Esquire also requested injunctive relief prohibiting the Board from "[p]roceeding with that portion of the Complaint regarding long-term volume discounts because any action by the Board to prohibit such discounts is *ultra vires* and outside the scope of its jurisdiction."

During oral argument, the Board rendered moot Esquire's claims that are predicated on the allegation that the Board is attempting to enforce proposed rules that the supreme court has not adopted. It made the judicial admission that the Board lacked authority to enforce its proposed rules against Esquire because the rules had not been approved by the supreme court, *see* Tex. Gov't Code Ann. § 52.002, and that the rules thus could not serve as a basis for its disciplinary complaint against Esquire. Accordingly, we consider only the claims founded on the allegation that the Board currently lacks statutory authority to regulate or prohibit long-term volume discount contracts.

## ANALYSIS

As grounds for reversal, the Board asserts that (1) Esquire's claim is not ripe, and Esquire lacks standing, because it is founded on the "contingencies" or "hypotheticals" that the

11

Board will actually determine that Esquire's particular contract violates section 52.0295 and, in so doing, exceed its authority; (2) the subject matter of Esquire's claim is within the Board's exclusive jurisdiction, and the district court accordingly lacks subject-matter jurisdiction unless and until Esquire exhausts its administrative remedies and brings an appeal as permitted by chapter 52; and (3) the UDJA does not confer additional subject-matter jurisdiction on the district court and, in any event, does not waive sovereign immunity barring Esquire's suit.

Our analytical starting point in cases, such as this one, involving disputes over whether a trial court or administrative agency has subject-matter jurisdiction over a dispute is article V, section 8 of the Texas Constitution. It provides that a district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8. The legislature has provided by statute that district courts possess "the jurisdiction provided by Article V, Section 8, of the Texas Constitution," and "may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity." Tex. Gov't Code Ann. §§ 24.007-.008 (West 2004). Thus, "[c]ourts of general jurisdiction presumably have subject matter jurisdiction unless a contrary showing is made." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002).

By contrast, "there is no presumption that administrative agencies are authorized to resolve disputes. Rather, they may exercise only those powers the law, in clear and express statutory language, confers upon them." *Id.* "Courts will not imply additional authority to agencies, nor may

12

agencies create for themselves any excess powers." *Id.* The courts are not divested by an agency of the subject-matter jurisdiction they would otherwise possess to adjudicate a dispute unless the legislature has granted the agency exclusive jurisdiction, or the sole power to make the initial determination in the dispute. *Id.* at 221; *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 90 (Tex. App.—Austin 2004, pet. denied). Whether an agency has exclusive jurisdiction is determined by construction of the relevant statutory scheme. *See Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006). The legislature's intent to grant an agency the sole authority to make the initial determination in a dispute may be reflected in either express statutory language to that effect or the overall statutory scheme. *Id*. at 340-42.

We agree with the Board that the legislature has granted it exclusive jurisdiction to make the initial determination, "[a]fter receiving a complaint and giving . . . notice and an opportunity for a hearing as prescribed by Section 52.028," whether grounds for discipline against a court reporting firm exist under section 52.0295. *See* Tex. Gov't Code Ann. § 52.0295(a). Although the legislature did not explicitly use the term "exclusive" to describe the Board's jurisdiction over disciplinary claims against court reporting firms, such intent is apparent from the statutory scheme. Chapter 52 comprehensively regulates the practice of court reporting in Texas, including establishing certification, education, and conduct requirements for court reporters and court reporting firms. The Board is charged with the duty to "administer and enforce this chapter" and "the executive functions necessary to carry out the purposes of this chapter under rules adopted by the supreme court." Court reporting firms are required to register with the Board, and "[r]ules applicable to a court reporter are also applicable to a court reporting firm." *Id.* §§ 52.021(h)-(i),

13

.0255; *see id.* §§ 52.013(1), .0131.  The legislature has mandated that the Board "shall reprimand, assess a reasonable fine against, or suspend, revoke, or refuse to renew the registration of" a court reporting firm if grounds for discipline exist under section 52.0295.  *Id.* § 52.0295(a).  To this end, the legislature established a procedure whereby a person with knowledge of disciplinary grounds may file a complaint, and the Board determines (1) whether the complaint is "properly executed" (i.e., complies with the requisites of section 52.027(a)), (2) whether the "board believes that a hearing on the complaint is advisable," and (3) whether, based on the hearing, one or more of the grounds for discipline enumerated in section 52.0295 has been established.  *See id.* §§ 52.027, .028, .0295.  A court reporting firm that is aggrieved by a Board disciplinary action may appeal that action to district court.  *See id.* § 52.030.  We can discern from this statutory scheme that the legislature intended the Board to have exclusive authority to make these determinations as an initial matter.  *See Thomas*, 207 S.W.3d at 340-42.

Esquire maintains, however, that the subject matter of its suit does not fall within the Board's exclusive jurisdiction over chapter 52 disciplinary complaints.  It characterizes its claims as challenges to whether the Board has *statutory authority* to regulate or prohibit *any* "long-term volume discounts" for court reporting services, which it would distinguish from the subject matter of the Board's complaint against it regarding specific potential violations.  *Cf. Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 517-20 (Tex. App.—Austin 2003, pet. denied) (distinguishing between APA appeal of "a particular Commission order" and UDJA claim for "a determination of the Commission's general authority" that would resolve a larger underlying controversy reflected in other agency proceedings; the latter was "broader than the effectiveness of one particular order and requests relief more expansive than the reversal of a

14

particular Commission determination"); *see also Texas Dept. of Ins., Div. of Workers' Comp. v. Lumbermens Mut. Cas. Co.*, 212 S.W.3d 870, 875 (Tex. App.—Austin 2006, pet. denied) (distinguishing between complaint that agency acted ultra vires in issuing advisories regarding impairment determination and complaints arising from specific contested-case proceedings relating to the advisories' application). Esquire relies on the established principle that the legislature's delegation of exclusive jurisdiction to an agency to make an initial determination in a dispute does not necessarily divest courts of their subject-matter jurisdiction over a dispute concerning whether the agency has acted beyond its delegated powers. *See Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 735 S.W.2d 663, 668 (Tex. App.—Austin 1987, no writ) (characterizing this power as the "inherent, original, equitable jurisdiction of the district court to protect against agency action that is ultra vires of the agency's constitutional and statutory powers" and observing that "[i]t is indisputable that the district courts of the State possess such jurisdiction"). Claims predicated on such agency action thus are not subject to the exhaustion-of-remedies requirements applicable to a dispute within the agency's jurisdiction, *see City of Sherman v. Public Util. Comm'n*, 643 S.W.2d 681, 683, 686 (Tex. 1983); *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978), nor barred by the principle of judicial non-interference with agency functions within the scope of its delegated authority. *Brockette*, 567 S.W.2d at 785 ("Courts generally hold that administrative bodies are entitled to and should exercise the duties and functions conferred by statute without interference by the courts. It follows, however, that intervention by the court in administrative proceedings may be permissible when an agency is exercising authority beyond its statutorily conferred powers."). Such a claim may be asserted through a common-law injunction suit, *see id.* at 585-86, or, where it requires construction of the agency's statutory powers, through the UDJA.

*City of Sherman*, 643 S.W.2d at 682, 683-86; *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 1997) (a claimant "whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under [it] and obtain a declaration of rights, status, or other legal relations thereunder").

Esquire contends that the Board has exceeded its statutory authority because section 52.0295 and related provisions do not authorize the Board to regulate or prohibit long-term volume discount contracts for court reporting services. This is the same basic question presented in the disciplinary proceeding—whether or how any of the disciplinary grounds enumerated in section 52.0295 apply to a long-term volume discount contract for court reporting services. The two proceedings differ only in that while the disciplinary proceedings would address whether the particular Esquire contract or contract underlying the 2003 deposition violates section 52.0295, Esquire's UDJA claim would determine, in effect, whether *any* long-term volume discounts for court reporting services could ever violate the provision. The disciplinary proceeding could thus address the same issues presented in Esquire's claims. If the Board decides that Esquire violated section 52.0295, it will necessarily have determined that a long-term volume discount contract could violate the provision. Conversely, if the Board decides that Esquire did not violate section 52.0295, it may do so on the basis that long-term volume discounts categorically are not prohibited by the provision. In these ways, Esquire's claims fall within the exclusive subject-matter jurisdiction of the Board. *See Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674, 676 (Tex. 2006) (emphasizing that UDJA cannot be used to circumvent agency's exclusive jurisdiction over same subject matter).

On the other hand, Esquire's claims are not entirely duplicative of the disciplinary proceeding, as the Board could conceivably determine that Esquire's contract does not violate

16

section 52.0295 without reaching the question of whether long-term volume discount contracts for court reporting services would ever violate those prohibitions. To this extent, Esquire's claims for a declaration that *no* such contracts would ever violate section 52.0295 and injunctive relief on that basis would seek broader relief than might be available in the disciplinary proceeding. *See Texas Mun. Power Agency*, 100 S.W.3d at 519. However, such claims, to the extent they are not within the Board's exclusive jurisdiction, are not ripe.

Esquire must allege a justiciable controversy regarding whether the Board is acting beyond its statutory powers in order for the district court to have subject-matter jurisdiction over either its UDJA[6] or common-law injunction claims. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Beadle*, 907 S.W.2d at 467 (quoting *Bexar-Medina-Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Prot. Ass'n*, 640 S.W.2d 778, 779-80 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.). Ripeness and standing are related doctrines of justiciability: each is a threshold question that implicates subject matter jurisdiction and each emphasizes the necessity of a concrete injury for a justiciable claim to be presented. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) (citing *Patterson v. Planned Parenthood*,

_____

[6] The UDJA does not create or augment a trial court's subject-matter jurisdiction—it merely provides a remedy where subject-matter jurisdiction already exists. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (West 1997) ("A court of record *within its jurisdiction* has power to declare rights, status and other legal relations . . . ." (emphasis added)); *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

17

971 S.W.2d 439, 442 (Tex. 1998)).  Ripeness and standing, like other justiciability doctrines, derive in part from the constitutional prohibition against advisory opinions, which in turn stems from separation-of-powers principles.  *Patterson*, 971 S.W.2d at 442.

A case is not ripe when its resolution depends upon contingent or hypothetical facts or upon events that have not yet come to pass.  *Gibson*, 22 S.W.3d at 852.  In addition to restraining courts from issuing unconstitutional advisory opinions, ripeness also has a pragmatic, prudential aspect that aims to conserve "judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes."  *Patterson*, 971 S.W.2d at 443 (quoting *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)).  In this regard, avoiding premature litigation over administrative actions prevents courts from "'entangling themselves in abstract disagreements over administrative policies' while at the same time serving to 'protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"  *Id*.  (quoting *City of El Paso v. Madero Dev. & Constr. Co.*, 803 S.W.2d 396, 398-99 (Tex. App.—El Paso 1991, writ denied) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967))).  These factual and prudential concerns underlie the court's determination of ripeness, in which it considers:  (1) the fitness of the issues for judicial decision and (2) the hardship occasioned to a party by the court's denying judicial review.  *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001) (citing *Abbott Labs.*, 387 U.S. at 149).

This Court has recognized that, in the context of claims regarding the scope of agency authority, ripeness may turn on whether the issues presented are purely legal in nature as opposed to requiring consideration of particularized facts in light of agency expertise.  *Compare City of Waco v. Texas Natural Res. Conservation Comm'n*, 83 S.W.3d 169, 175-77 (Tex. App.—Austin

18

2002, pet. denied) (holding that UDJA claim that agency acted beyond statutory authority "presents a purely legal inquiry" that "will not benefit from the development of additional facts in connection with a specific permit application"), *with Beacon Nat'l Ins. Co. v. Montemayor,* 86 S.W.3d 260, 268 (Tex. App.—Austin 2002, pet. denied) (distinguishing *City of Waco* and holding that UDJA claims there "require[d] determination of several factual matters which have not been sufficiently developed")[7]; *cf. Montemayor,* 86 S.W.3d at 271-72 (discussing primary jurisdiction doctrine and holding that it compelled court to await department of insurance's initial determination regarding interpretation of policy forms where inquiry entailed "fact-based questions" whose resolution would benefit from agency's expertise).[8]  We conclude that Esquire's claims fall into the latter category.

To determine whether the Board has statutory authority to regulate or prohibit long-term volume discounts for court reporting services, a court would have to decide whether *any* such

---

[7]  The federal ripeness jurisprudence that the Texas Supreme Court has applied, *see Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001) (citing *Abbott Labs.*, 387 U.S. at 149), appears to employ a similar analysis in determining the "fitness" for judicial resolution of issues regarding an agency's statutory authority, considering whether the issues are primarily legal rather than factual in nature, whether further factual development in the agency would significantly aid the court's ability to decide the issue, and whether the court's decision would be informed by the agency's specialized expertise in applying the statute to concrete facts. *See Abbott Labs.*, 387 U.S. at 149-50; *see also National Park Hosp. Assoc. v. Dep't of the Interior*, 538 U.S. 803, 812 (2003) (determining that facial challenge to regulation, although "a purely legal one," was not fit for review because its resolution could depend upon specific features of contracts impacted by regulation); *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1968) (determination of whether agency acted within statutory power to adopt regulations "for efficient enforcement" of statute should be informed by "an understanding of what types of enforcement problems are encountered by the [agency], the needs for various sorts of supervision in order to effectuate the goals of the Act, and the safeguards needed . . . . We believe that judicial appraisal of these factors is likely to stand on a much surer footing in the context of a specific application of the regulation than could be the case in the generalized challenge made here.").

[8]  *See also* Ronald L. Beal, 2 *Texas Administrative Practice and Procedure* § 12.2, at 12-50 to 12-51 (2006) (suggesting that primary-jurisdiction principles govern whether challenge to allegedly ultra vires agency actions can proceed or must yield to agency proceeding).

contracts could "undermine the impartiality of the court reporter," "give or appear to give an exclusive advantage to any party," or constitute "dishonesty" or "other sufficient cause" for discipline. Such broad and somewhat subjective terms contemplate fact-specific application. Whether or how such prohibitions would apply to "long-term volume discount contracts" for court reporting services without concrete facts regarding their features, the circumstances surrounding their use, and their effects would present the sorts of "hypothetical, or remote disputes," *Patterson*, 971 S.W.2d at 443, and "abstract disagreements over administrative policies" that the ripeness doctrine is intended to prevent. We further observe that these statutory terms, like others in chapter 52, contemplate considerations of policy and ethics related to the court reporting industry and its role in the justice system. The Board (and ultimately, the supreme court) is statutorily empowered and equipped to identify and weigh such determinations in its administration of chapter 52, and the legislature has manifested the intent that it do so when interpreting and applying the statutory disciplinary grounds. These considerations confirm that Esquire's suit is not ripe, to the extent it is not entirely subsumed within the Board's exclusive subject-matter jurisdiction.

For these reasons, we hold that the district court erred in overruling the Board's plea to the jurisdiction. We need not address the Board's other issues. Accordingly, we reverse the order of the district court overruling the Board's plea to the jurisdiction and render judgment dismissing Esquire's claims.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Reversed and Dismissed

Filed:   July 20, 2007

20