ACCEPTED
03-14-00774-CV
6885139
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/11/2015 12:00:49 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-00774-CV

_____

IN THE THIRD COURT OF APPEALS
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/11/2015 12:00:49 PM
JEFFREY D. KYLE
Clerk

_____

**TEXAS STATE BOARD OF VETERINARY MEDICAL EXAMINERS, and NICOLE ORIA, in Her Official Capacity as Executive Director**
*Appellants/Cross-Appellees*,

**v.**

**ELLEN JEFFERSON, D.V.M.,**
*Appellee/Cross-Appellant*.

_____

**On Appeal from the 127th Judicial District Court of Travis County, Texas**
**Cause No. D-1-GN-14-000287**
**The Honorable Gisela D. Triana presiding**

_____

**BRIEF OF CROSS-APPELLEES TEXAS STATE BOARD OF VETERINARY MEDICAL EXAMINERS AND NICOLE ORIA, IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR**

_____

**KEN PAXTON**
**Attorney General of Texas**

**CHARLES E. ROY**
**First Assistant Attorney General**

**JAMES E. DAVIS**
**Deputy Attorney General for**
**Civil Litigation**

**DAVID A. TALBOT, JR.**
**Chief, Administrative Law Division**

**TED A. ROSS**
**Assistant Attorney General**
**State Bar No. 24008890**
**OFFICE OF THE TEXAS ATTORNEY GENERAL**
**ADMINISTRATIVE LAW DIVISION**
**P.O. Box 12548**
**Austin, Texas  78711-2548**
**Telephone:  (512) 475-4191**
**Facsimile:   (512) 457-4674**
**Email:  ted.ross@texasattorneygeneral.gov**
*Attorneys for Appellants/Cross-Appellees*

**ORAL ARGUMENT CONDITIONALLY REQUESTED**    September 11, 2015

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. ii

INDEX OF AUTHORITIES........................................................................ iv

RECORD AND PARTY REFERENCES ............................................... viii

STATEMENT OF THE CASE..................................................................... ix

CONDITIONAL REQUEST FOR ORAL ARGUMENT ........................x

ISSUES PRESENTED FOR REVIEW ..................................................... xi

INTRODUCTION ..........................................................................................2

      What this appeal is and is not about: ..........................................2

      Background: ...................................................................................2

STATEMENT OF THE CASE AND STATEMENT OF FACTS ...........................5

      Statement of Facts Relevant to the Jurisdictional Issue................................5

SUMMARY OF THE ARGUMENT .........................................................9

ARGUMENT ...............................................................................................11

    I.     THE TRIAL COURT'S JUDGMENT THAT IT LACKED SUBJECT MATTER JURISDICTION WAS CORRECT. .............11

        A.    The Act vests the Board with exclusive jurisdiction to determine *whether or not* a licensed veterinarian is exempt under the particular facts before it. ...........................................11

            The statutory framework governing the Board........................11

            The exemption...................................................................12

B.    Dr. Jefferson's jurisdictional argument, if correct, would create an absurd result which the Legislature never intended. .17

C.    Dr. Jefferson's arguments on the merits are irrelevant to the issues to be decided in this appeal. ....................................18

II.    THE ACTIONS OF THE BOARD'S EXECUTIVE DIRECTION WERE NOT ULTRA VIRES. ..........................................................19

III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT A MATERIAL ISSUE IN THIS APPEAL. ....................................23

IV.    DR. JEFFERSON'S CLAIMS ARE NOT RIPE BECAUSE THE BOARD HAS NOT TAKEN FINAL ACTION......................25

V.    THE TRIAL COURT CORRECTLY DENIED DR. JEFFERSON'S REUEST FOR MANDAMUS RELIEF.................29

VI.    THE TRIAL COURT'S DECLARATIONS REGARDING OTHER LAWS OUTSIDE THE ACT WERE BEYOND THE SCOPE OF RELIEF REQUESTED BY THE PARTIES. ................31

CONCLUSION AND PRAYER ..............................................................32

CERTIFICATE OF COMPLIANCE.....................................................34

CERTIFICATE OF SERVICE ...............................................................34

iii

# INDEX OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967).......................................................27

*Am. Southwest Ins. Managers, Inc. v. Tex. Dep't of Ins.*, No. 03-10-00073-CV, 2010 WL 4053726 at \*4 (Tex. App.—Austin Oct. 15, 2010, no pet.) ................26

*Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161 (Tex. App.— Austin 2013, no pet.) ...................................................................................19

*Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674, 675 (Tex. 2006)........14

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002)........................................14

*Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149 (Tex. 1988) ...........................27

*City Council of Austin v. Save Our Springs Coal.*, 828 S.W.2d 340 (Tex. App.—Austin 1992, no writ)............................................................... 10, 29

*City of Coahoma v. Pub. Util. Comm'n of Tex.*, 626 S.W.2d 488 (Tex. 1981).......16

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009) .....................................19

*City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994) ...............................20

*City of Rockwall v. Hughes*, 246 S.W.3d 621 (Tex. 2008)....................................18

*City of Sherman v. Pub. Util. Comm'n of Tex*, 643 S.W.2d 681 (Tex. 1983) .........16

*City of San Antonio ex rel. City Serv. Pub. Bd. v. Bastrop Cent. Appraisal Dist.*, 275 S.W.3d 919 (Tex. App.—Austin 2009 pet. dism'd) ..........29

*Coastal Habitat Alliance v. Pub. Util. Comm'n of Tex.*, 294 S.W.3d 276 (Tex. App—Austin, 2009, no pet.) ...................................................................21

*Hawkins v. Cmty. Health Choice, Inc.*, 127 S.W.3d 322 (Tex. App.— Austin 2004, no pet.)...................................................................................15

*Hendee v. Dewhurst*, 228 S.W.3d 354 (Tex. App.—Austin 2007, pet. denied)......20

*In re Columbia Med. Ctr. of Las Colinas, L.P.*, 290 S.W.3d 204 (Tex. 2009) .......29

*In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124 (Tex. 2004)..............................30

*Johnson v. State*, No. 03-08-00667-CV, 2009 WL 2195585 (Tex. App.—
Austin July 24, 2009, no pet.) ................................................................26

*No. Alamo Water Supply Corp. v. Dep't of Health*, 839 S.W.2d 455
(Tex. App.—Austin 1992, writ denied) .................................................21

*Patterson v. Planned Parenthood of Houston and Se. Tex., Inc.*,
971 S.W.2d 439 (Tex. 1998)......................................................... 25, 27

*R.R. Comm'n of Tex. v. CenterPoint Energy Res. Corp.*, No. 03-13-00533-CV,
2014 WL 4058727, at *4 (Tex. App.—Austin Aug. 14, 2014, no pet.)........ 27, 28

*Rains v. Simpson*, 50 Tex. 495, 1878 WL 9285 at *7 (1878)................................20

*Rea v. State*, 297 S.W.3d 379 (Tex. App.—Austin 2009, no pet.)..........................26

*Robinson v. Parker*, 353 S.W.3d 753 (Tex. 2011) ................................................25

*Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129 (Tex. App.—Austin
1986, writ ref'd n.r.e.)..............................................................................13

*State v. Holland*, 221 S.W.3d 639 (Tex. 2007).......................................................24

*S.W. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578 (Tex. 2015).................................20

*Tara Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564 (Tex. App.—
Houston [14th Dist.] 2009, pet. denied)................................................15

*Tex. Air Control Bd. v. Travis Cnty.*, 502 S.W.2d 213 (Tex. Civ. App.—
Austin 1973, no writ) .............................................................................26

*Tex. Court Reporters Certification Bd. v. Esquire Deposition
Servs., L.L.C.*, 240 S.W.3d 79 (Tex. App.—Austin 2007, no pet.) ............... 12, 14

v

*Tex. Dep't of Human Servs. v. Christian Care Centers*, 826 S.W.2d 715
(Tex. App.—Austin 1992, writ denied) ................................................................13

*Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004) .........24

*Tex. Dep't of Transp. v. City of Sunset Valley*, 8 S.W.3d 727
(Tex. App.—Austin 1999, no pet.) ......................................................................18

*Tex. Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691
(Tex. App.—Austin 2011, no pet.) ......................................................................20

*Tex. State Bd. of Exam'rs in Optometry v. Carp*, 343 S.W.2d 242 (Tex. 1961) .....15

*Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849 (Tex. 2000) ....................... 25, 26

**Statutes**

Tex. Civ. Prac. & Rem. Code § 37.001 ..................................................................7

Tex. Gov't Code § 2001.038..................................................................................7

Tex. Gov't Code § 2001.171................................................................................28

Tex. Gov't Code § 2001.174..................................................................................3

Tex. Gov't Code § 801.004(1)........................................................................ passim

Tex. Occ. Code § 801.151 ..................................................................................11

Tex. Occ. Code § 801.151(c)(1) .................................................................... 11, 21

Tex. Occ. Code § 801.158(a)(2) ........................................................................22

Tex. Occ. Code §§ 801.203, .204 .................................................................. 17, 21

Tex. Occ. Code §§ 801.204, .205 .................................................................. 17, 21

Tex. Occ. Code § 801.2055 ................................................................................22

Tex. Occ. Code § 801.307 ..................................................................................23

Tex. Occ. Code § 801.359 ..................................................................................23

Tex. Occ. Code § 801.402(3) ..............................................................................23

Tex. Occ. Code § 801.402(4) ..............................................................................23

Tex. Occ. Code § 801.402(6), (13) ......................................................................13

Tex. Occ. Code § 801.402(14) ............................................................................23

Tex. Occ. Code §§ 801.402(4), (6), (12), (13), (16) ............................................11

Tex. Occ. Code § 801.403 ..................................................................................23

Tex. Occ. Code § 801.405 ..................................................................................23

Tex. Occ. Code § 801.408(c) ..............................................................................22

Tex. Occ. Code § 801.453 ..................................................................................22

Tex. Occ. Code § 801.455(a)-(b) ........................................................................22

Tex. Occ. Code § 801.456(a) ................................................................. 12, 13, 18

Tex. Occ. Code § 801.456(a)(2) ..........................................................................27

**Rules**

Tex. R. App. P. 38.1(g) .........................................................................................5

# RECORD AND PARTY REFERENCES

The clerk's record will be referred to as "CR ____."

The reporter's record will be referred to as "RR, Vol. ___."

Appellants/Cross-Appellees, the Texas State Board of Veterinary Medical Examiners, and Nicole Oria in Her Official Capacity as Executive Director, will be collectively referred to as the "Board" unless otherwise designated.

Appellant/Cross-Appellee Nicole Oria, Executive Director of the Board, will be referred to as "Ms. Oria."

Appellee/Cross-Appellant, Ellen Jefferson, D.V.M., will be referred to as "Dr. Jefferson."

The Appendix and tabs will be referred to as "App. Tab ___."

## STATEMENT OF THE CASE

Because this cross-appeal is limited to the issue of whether the trial court had subject matter jurisdiction, and because there are no disputed jurisdictional facts, the Board has combined its statement of the case with its statement of facts. *See infra*.

## CONDITIONAL REQUEST FOR ORAL ARGUMENT

The issues related to the jurisdictional issues in this case are purely legal in nature, and the Board therefore does not believe that oral argument would assist the Court with respect to those issues.  However, the Board reserves the right to oral argument should it be granted.

# ISSUES PRESENTED FOR REVIEW

1. Does the Texas Veterinary Licensing Act ("Act") afford the Board exclusive jurisdiction to determine whether or not Dr. Jefferson is exempt from that act?

2. Were the actions of the Board's Executive Director ultra vires, given that she was undertaking her statutory duty to investigate and, if necessary, prosecute complaints against Board licensees?

3. Are Dr. Jefferson's claims ripe for review?

4. Did the trial court err in denying Dr. Jefferson's request for mandamus relief?

NO. 03-14-00774-CV

_____

IN THE THIRD COURT OF APPEALS
AT AUSTIN, TEXAS

_____

TEXAS STATE BOARD OF VETERINARY MEDICAL EXAMINERS, and
NICOLE ORIA, in her Official Capacity as Executive Director
                                        *Appellants/Cross-Appellees*,
                               v.

ELLEN JEFFERSON, D.V.M.,
                                        *Appellee/Cross-Appellant*.

_____

On Appeal from the 127th Judicial District Court of Travis County, Texas
Cause No. D-1-GN-14-000287
The Honorable Gisela D. Triana presiding

_____

BRIEF OF CROSS-APPELLEES TEXAS STATE BOARD OF
VETERINARY MEDICAL EXAMINERS AND NICOLE ORIA, IN HER
OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR

_____

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

Cross-Appellees, the Texas State Board of Veterinary Medical Examiners,

and Nicole Oria, in Her Official Capacity as Executive Director (hereinafter

collective referred to as the "Board" unless otherwise designated), by and through

the Office of the Attorney General of Texas and the undersigned Assistant Attorney

General, submit the following brief in the captioned appeal.

**INTRODUCTION**

**What this appeal is and is not about:**

This appeal is limited to the legal issue of whether the Board which has subject matter jurisdiction to *determine* whether Dr. Jefferson is exempt from the Act with respect to her care and treatment of Starlight.

This appeal is *not* about whether or not Dr. Jefferson *is in fact* exempt.

**Background:**

This case originates from the death of a German Shepherd dog ("Starlight"), which the Board contends resulted from Dr. Jefferson's violations of the Act and related Board rules. Dr. Jefferson is attempting to circumvent the administrative law process by requesting court intervention in an ongoing enforcement proceeding. In fact, the parties have already tried the issue of whether or not Dr. Jefferson is exempt from the Act with respect to her treatment of the animal in question at the State Office of Administrative Hearings ("SOAH"). App. Tab 1. The Administrative Law Judge ("ALJ") has issued a preliminary determination that Dr. Jefferson is exempt. *Id.* There are two other issues which remain to be tried at SOAH, those being an alleged mis-handling of medication and failure to cooperate with Board staff in its investigation. *Id.* at 16. Further, the SOAH proceeding has been referred to mediation with the agreement of Dr. Jefferson. App. Tab 2. It is therefore possible that all of the issues related to Dr. Jefferson's care and treatment of the subject

animal could be settled. If the issues are not settled, Dr. Jefferson would have the right to judicial review of any discipline which could be imposed in the Board's final order. Tex. Gov't Code § 2001.174. Further, even if this Court were to reverse the trial court's decision to grant the Board's plea, the case would have to be remanded to the trial court for the entry of a judgment based on the facts developed at trial. In that event, the parties would have the right to submit proposed findings of fact and conclusions of law, many of which would undoubtedly be disputed. That would add to the time and expense of an ultimate resolution of all of the issues. The losing party would then have to right to appeal the trial court's decision on whether Dr. Jefferson is exempt to this Court. Yet, Dr. Jefferson steadfastly insists on pursuing this appeal in the face of these facts, including her repeated conflation of the issue of subject matter jurisdiction with the issue of *whether or not she is in fact exempt*. The latter issue is simply not before this Court.

That all said, no one questions Dr. Jefferson's love for animals and her desire to reduce unwanted euthanasia. That concern is certainly shared by the members of the Board and Board staff. In fact, some Board members themselves provide veterinary care at shelters and for rescue organizations groups from time to time. It would be very surprising if anyone associated with this case (including counsel for all parties) did not share the same concern. However, while Dr. Jefferson's background and work in the no-kill movement is admirable, it remains that she is

3

subject to the Board's statutory duty to protect the public from the unsafe practice of veterinary medicine. That includes the Boards *statutory duty* to determine in the first instance whether Dr. Jefferson is exempt from the Act under the facts developed through Board Staff's investigation and as determined by the ALJ in a contested case hearing (which, again, has already occurred).

**STATEMENT OF THE CASE AND STATEMENT OF FACTS**

Dr. Jefferson's "Statement of Facts" is replete with impermissible argument. Jefferson Br. at 4-19. *See* Tex. R. App. P. 38.1(g). It also contains facts not pertinent to the issues in this appeal, particularly those related to the *substantive* (not jurisdictional) issue of whether she is *in fact* exempt from the Act. This includes her involvement in the "no kill" movement. While some background about San Antonio Pets Alive ("SAPA") and Dr. Jefferson's involvement with SAPA is helpful, the majority of these alleged facts have nothing to do with subject matter jurisdiction.[1]

Dr. Jefferson also argues irrelevant issues, such as her contention that the Board somehow "agreed" that it didn't have subject matter jurisdiction even though subject matter jurisdiction cannot be waived, her being "forced to sue," and her claim that the Legislature "is not happy with the (Board's) shelter prosecutions." *Id.*

**Statement of Facts Relevant to the Jurisdictional Issue**

The facts that are actually pertinent to the jurisdictional issue in this appeal are as follows:

---

[1] Jefferson states in her brief that the Board's plea to the jurisdiction was carried with the trial on the merits by agreement of the parties. Jefferson Br. at xiii. She fails to mention, however, that the Board later requested a pre-trial ruling on its plea and a continuance of the trial date for a number of reasons, most notably that Dr. Jefferson expanded her allegations against the Board near the date of the trial. CR 613-617.

1.    Dr. Jefferson holds a license to practice veterinary medicine in Texas. CR 5, ¶ 1.

2.    Dr. Jefferson is the founder and chief executive officer of SAPA, a "no-kill" animal shelter located in San Antonio, Texas. *Id*.

3.    On November 23, 2012, the Board received a complaint from a foster care provider about Dr. Jefferson's conduct related to a three-year old female German Shepherd named Starlight, who had been fostered out by SAPA. CR 56. The complaint asserted several allegations about Dr. Jefferson's diagnoses of Starlight. CR 56-61. The complaint also alleged that drugs Dr. Jefferson prescribed for Starlight's care were not properly administered, but were instead left on a SAPA volunteer's front porch without proper labeling. CR 59.

4.    After an informal settlement conference, review by the Board's enforcement committee, and written notice to Dr. Jefferson, the Board filed a notice of hearing at SOAH, alleging violations of Chapter 801 of the Texas Occupations Code (the "Act") and Board rules. CR 53-63. In particular, the Board alleged that Dr. Jefferson:

- failed to establish a veterinary client patient relationship prior to diagnosing and treating Starlight and prior to prescribing and dispensing medication;

- failed to treat Starlight with the required minimum standard of care;

- failed to maintain proper patient records;

- failed to properly label medication; and

- engaged in a pattern of acts that indicate consistent malpractice, negligence, or incompetence in the practice of veterinary medicine.

*Id.*

5.     Instead of proceeding with the Starlight complaint before SOAH, Dr. Jefferson sued the Board in the trial court, asserting claims for declaratory relief under the Texas Uniform Declaratory Judgments Act ("UDJA"), as well as for injunctive and mandamus relief. CR 4. *See* Tex. Civ. Prac. & Rem. Code §§ 37.001, *et seq*. She later filed an amended petition wherein she challenged several Board rules under the Texas Administrative Procedure Act ("APA"), including the two rules in question in this proceeding. CR 216-223. *See* Tex. Gov't Code § 2001.038.

6.     The Board filed a plea to the jurisdiction, which was carried with the case to trial. CR 67.

7.     After a bench trial held on August 4, 2014, the district court issued a final judgment which granted the Board's plea with respect to Dr. Jefferson's UDJA claims, and denied the Board's plea regarding her rule challenge. CR 855. The court ruled that it had jurisdiction over Dr. Jefferson's rule challenge and went on to uphold the validity of the Board rules in question, with the exception of Board Rules 573.72 and 573.80(2). *Id.* The Board appealed that decision and filed its initial brief on the rule-challenge issue on July 8, 2015.

7

8.    After the district court entered its judgment determining that it lacked jurisdiction over the exemption issue, and after the parties filed their respective cross-appeals, Dr. Jefferson and Board Staff tried the exemption issue at SOAH. App. Tab 1. The ALJ then issued a preliminary determination that, based on the facts elicited at the contested case trial, Dr. Jefferson is in fact exempt. *Id.* The two remaining issue involving Dr. Jefferson's care and treatment of Starlight have not yet been tried, and all of the matters pending at SOAH have been referred to mediation. App. Tab 2.

## SUMMARY OF THE ARGUMENT

The Board has exclusive jurisdiction to determine whether or not the exemption contained in § 801.004(1) of the Act applies to Dr. Jefferson, a licensed veterinarian. The legislative intent supporting this fact is clearly established in the statutory scheme outlined in the Act. Dr. Jefferson's entire jurisdictional argument is based on her mistaken premise that she can simply plead her way out of the Board's exclusive jurisdiction by just *claiming* that she's exempt. To the contrary, Dr. Jefferson cannot plead herself out of the Board's exclusive jurisdiction to determine the applicability of the exemption to her.

Dr. Jefferson's ultra vires claim is also without merit. Both the Act and Board rules demonstrate that nothing Ms. Oria did with respect to determining Dr. Jefferson's exemption was ultra vires. In investigating the complaint against Dr. Jefferson and referring it for a contested case hearing, Ms. Oria acted wholly within her authority under the Act. Dr. Jefferson cannot credibly refute the fact that Ms. Oria's actions were discretionary and wholly authorized under the statutory scheme contained in the act. Even if they were not, the fact that she may have made the "wrong call" on a matter does not rise to the level of an ultra vires action.

In addition, because the Board has exclusive jurisdiction, it is apparent that Dr. Jefferson's claims are not ripe for review. The facts related to the complaint against Dr. Jefferson involves facts which have not been finally resolved through the

9

contested case process. The Board certainly has not issued any final order in any matter involving Dr. Jefferson, and will not do so until after the administrative law judge issues a proposal for decision.

Finally, Dr. Jefferson's mandamus claim is also without merit. Mandamus will lie only to compel a governmental official to perform a ministerial act, one for which "the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *See City Council of Austin v. Save Our Springs Coal.*, 828 S.W.2d 340, 342-43 (Tex. App.—Austin 1992, no writ) (holding that mandamus would not lie where the city had discretion to act). Here, Dr. Jefferson has not and cannot show that the Board has a ministerial duty to dismiss the contested case or otherwise decline to investigate the complaints against her. Further, the benefits of mandamus relief are indeed outweighed by the detriments. Judicial interference with the Board's legislatively-granted authority to investigate and prosecute complaints would have a negative impact on its ability to protect the public by insuring that a vet who claims to be exempt from the Act is in fact correct.

10

## ARGUMENT

## I. THE TRIAL COURT'S JUDGMENT THAT IT LACKED SUBJECT MATTER JURISDICTION WAS CORRECT.

## A. The Act vests the Board with exclusive jurisdiction to determine *whether or not* a licensed veterinarian is exempt under the particular facts before it.

The statutory framework governing the Board

The Board is the state agency empowered to regulate the practice of veterinary medicine in Texas. Tex. Occ. Code § 801.151. This includes the broad authority to adopt rules to protect the public. Tex. Occ. Code § 801.151(c)(1). Among the Board's specific duties are the authority to discipline license holders for, among other things, engaging in dishonest or illegal practices in, or connected with, the practice of veterinary medicine or the practice of equine dentistry; engaging practices or conduct that violates the Board's rules of professional conduct; performing or prescribing unnecessary or unauthorized treatment; ordering a prescription drug or controlled substance for the treatment of an animal without first establishing a veterinarian-client-patient relationship; and committing gross malpractice or a pattern of acts that indicate consistent malpractice, negligence, or incompetence in the practice of veterinary medicine or the practice of equine dentistry. Tex. Occ. Code §§ 801.402(4), (6), (12), (13), (16).

11

<u>The exemption</u>

The exemption which is the subject of this appeal provides:

> This chapter does not apply to: the treatment or care of an animal in any manner by the owner of the animal, an employee of the owner, or a designated caretaker of the animal, unless the ownership, employment, or designation is established with the intent to violate this chapter

Tex. Gov't Code § 801.004(1).

The central issue in this appeal is whether the Board, under the statutory framework established in the Act, has the exclusive jurisdiction to make the fact-based determination of whether a vet who claims to be exempt is in fact exempt. Whether the Board has exclusive jurisdiction is a legal issue to be determined from an examination of the relevant statutory scheme contained in the Act. *Tex. Court Reporters Certification Bd. v. Esquire Deposition Servs.*, *L.L.C.*, 240 S.W.3d 79, 89 (Tex. App.—Austin 2007, no pet.).

The Act in fact demonstrates that the Board indeed has the exclusive authority to determine, through the procedures set forth in the Administrative Procedure Act ("APA"), whether professional discipline of a licensee such as Dr. Jefferson is appropriate. *See, e.g.,* Tex. Occ. Code § 801.456(a), which provides: "[b]ased on the findings of fact, conclusions of law, and proposal for a decision under Section 801.455(c), the board by order may determine that: (1) a violation has occurred and impose an administrative penalty; or (2) a violation did not occur." Tex. Occ. Code

12

§ 801.456(a). More specifically, the Board is charged with determining whether disciplinary action is appropriate if a person "engages in practices or conduct that violates the board's rules of professional conduct" and "orders a prescription drug or controlled substance for the treatment of an animal without first establishing a veterinarian-client-patient relationship." Tex. Occ. Code § 801.402(6), (13). Given this statutory framework, the Legislature could not have intended that a veterinarian subject to a complaint can escape these provisions simply by claiming to be exempt or by presenting one-sided evidence to the Board. Dr. Jefferson failed to provide the Board with any evidence of her meeting the exemption save from her word until after she filed her case in District Court.

Further, contrary to Dr. Jefferson's argument, it is not necessary that an agency's enabling act explicitly refer to the agency's jurisdictional enforcement authority:

> Lack of express authority for a particular act of an agency does not mean the agency has no authority for that act. An agency may have implied authority to take an action or promulgate a rule even though such authority might not be expressly enumerated in its enabling statute. *Indeed, under a general grant of authority, an agency has all the implied authority reasonably necessary to accomplish a delegated purpose.*

*Tex. Dep't of Human Servs. v. Christian Care Centers*, 826 S.W.2d 715, 719 (Tex. App.—Austin 1992, writ denied) (emphasis added). *See also Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137 (Tex. App.—Austin 1986, writ ref'd n.r.e.).

13

The Board believes that the statutory framework set forth in the Act clearly evinces a legislative intent that *licensed* veterinarians who *claim* to be exempt are accountable for such a claim through the fact-finding process established in the APA.

Case law also supports the Board's exclusive jurisdiction. In *Esquire*, Esquire Depositions Services alleged that the Court Reporters Certification Board ("CRCB") sought to take disciplinary action that was beyond its statutory authority (just as Dr. Jefferson does in this case). 240 S.W.3d at 88. The court rejected this contention and held that the board had exclusive jurisdiction to determine *whether* Esquire was subject to discipline after the development of facts at the administrative level, and thus the case was not ripe for judicial review. 240 S.W.3d at 93. Just as the court in *Esquire* held that the CRCB could determine whether discipline was appropriate, the Board in this matter has exclusive jurisdiction to make the same determination (through an initial threshold decision on whether a vet is in fact exempt from the Act). *See also Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 212 (Tex. 2002) (the Texas Supreme Court held that the Texas Motor Vehicle Board had exclusive jurisdiction over the issues and claims governed by the Texas Motor Vehicle Commission Code); *Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674, 675 (Tex. 2006) (per curiam).

In *Hawkins v. Cmty. Health Choice, Inc.*, 127 S.W.3d 322 (Tex. App.—Austin 2004, no pet.), the court held that even a simple matter such as whether there was pre-suit notice was provided is a question of fact that must be referred to SOAH. *Id.* at 327. Indeed, SOAH is empowered to determine adjudicative facts, which are those that answer "who, what, when, where and how" and are "roughly the kind of facts that go to a jury in a jury case." *Id.* at 325-26.

The Texas Supreme Court has also recognized and affirmed a state agency's duty to investigate complaints and enforce the provisions of its enabling act without judicial interference:

> There is a vast difference in a court's reviewing a final order of an administrative board and in prohibiting such board from making any order or from prosecuting an inquiry to ascertain whether any order will be necessary. That Courts are without authority to thus interfere with commissions and administrative departments of the government in the lawful exercise of duties and functions committed to them by law is well settled.

*Tex. State Bd. of Exam'rs in Optometry v. Carp*, 343 S.W.2d 242, 246 (Tex. 1961).

The cases cited by Dr. Jefferson are distinguishable. The issue in *Tara Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564 (Tex. App.—Houston [14th Dist.] 2009, pet. denied), was whether the Legislature *expressly* exempted from the agency's authority the "power or jurisdiction" to regulate utility rates. 282 S.W.3d at 573. Dr. Jefferson cannot dispute the fact that there is nothing in the Act which

expressly divests the Board of jurisdiction to determine whether one of its own licensees is exempt under § 801.004(1) of the Act.

Similarly, in *City of Sherman v. Pub. Util. Comm'n of Tex*, 643 S.W.2d 681 (Tex. 1983), the court noted that the "legislative intent to exclude municipally-owned utilities from the Act's jurisdictional provisions *is clear*." 643 S.W.2d at 684 (emphasis added). In making that determination, the court referred to the Supreme Court's discussion of the bedrock principles underlying statutory construction, many of which are pertinent in this case:

> No inflexible rule can be announced for the construction of statutes. However, the dominant rule to be observed is to give effect to the intention of the Legislature. Generally the intent and meaning is obtained primarily from the language of the statute. In arriving at the intent and purpose of the law, it is proper to consider the history of the subject-matter involved, the end to be attained, the mischief to be remedied, and the purposes to be accomplished.

643 S.W.2d 681, quoting *City of Coahoma v. Pub. Util. Comm'n of Tex.*, 626 S.W.2d 488, 490 (Tex. 1981).

In this case, the "history of the subject matter involved" is the Board's long-standing jurisdiction to license and regulate Texas veterinarians. The "end (and purpose) to be attained" is a determination of whether or not a vet who claims to be exempt is in fact exempt under the particular facts of each case. More broadly, the ultimate end to be attained is the protection of the public from the unsafe and unregulated practice of veterinary medicine. The "mischief to be remedied" is

16

violations of the Act which result in harm to the public. These canons of statutory construction demonstrate the Legislature's intent that the Board has exclusive jurisdiction to determine in the first instance whether or not a vet is exempt from the Act. Otherwise, any vet could simply claim to be exempt without any investigation of the facts underlying such a claim. That would lead to the unregulated practice of veterinary medicine, a result which the Legislature certainly did not intend.

It was plainly within the Board's implied authority under the Act to exercise jurisdiction over Dr. Jefferson with respect to the complaints about which it had a statutory duty to investigate and, if necessary, pursue to a contested case hearing.

**B.** **Dr. Jefferson's jurisdictional argument, if correct, would create an absurd result which the Legislature never intended.**

Dr. Jefferson's jurisdictional argument begs the question of what tribunal, if any determines whether or not she is exempt under the Act. In her view, the Board should have just taken her word that she fit into one or more of the exemption categories *without any investigation of any complaint* as mandated by the Act, and without providing the Board with any actual evidence and documentation. *See* Tex. Occ. Code §§ 801.203, .204, .205. If that were true, any veterinarian could evade the Act simply by just *claiming* to be exempt.[2] That is an absurd result which is

---

[2] It should be noted that Dr. Jefferson claimed she was exempt because she was an employee of SAPA. However, the SOAH ALJ found that she was in fact not an employee. App. Tab 1 at 12-13. It wasn't until closer to trial in district court that she changed her claim to say she was a designated care taker and owner.

nowhere contemplated under the Act or the APA.  *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008).  The Legislature in fact established a statutory framework by which the Board investigates complaints and, if necessary, refers them to an impartial tribunal (SOAH) before which the specific facts of a case are determined in a contested case hearing.  Tex. Gov't Code § 801.461(a).

It is absurd to suggest that a vet can take him or herself out of the disciplinary authority of the Board by just saying "because I said so."

## C.     Dr. Jefferson's arguments on the merits are irrelevant to the issues to be decided in this appeal.

Dr. Jefferson spends a great deal of time in her brief arguing the merits of the exemption issue.  Jefferson Br. at 44-52.  While the issue of whether or not she is exempt from the Act was tried, the trial court ultimately determined that it did not have jurisdiction in the first instance.  CR 855.

In considering whether grant of a plea to the jurisdiction was proper, an appellate court does not examine the merits of the case in its review of the grant or denial of a plea to the jurisdiction.  *Tex. Dep't of Transp. v. City of Sunset Valley*, 8 S.W.3d 727, 730 (Tex. App.—Austin 1999, no pet.).  As such, Dr. Jefferson's

argument related to whether or not she *was in fact exempt* from the Act are irrelevant.[3]

## II. THE ACTIONS OF THE BOARD'S EXECUTIVE DIRECTION WERE NOT ULTRA VIRES.

In order to come within the ultra vires exception of the UDJA, a plaintiff must plead and prove that a government officer acted without authority and that the suit does not seek to control state action. *Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 173 (Tex. App.—Austin 2013, no pet.). In addition, "[A] suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

---

[3] As part of her merits argument, Dr. Jefferson claims that language in a Board publication proves that she did not intend to violate the Act. Jefferson Br. at 51-52. In doing so, she continues her obfuscation of the issues in this appeal. Aside from the fact that the merits are not at issue here and that, in any event, subject matter jurisdiction cannot be waived, the issue is not about *SAPA's* ownership of any animal. The quoted language refers to a *shelter* being the owner of an animal as a general principle. The Board in fact stipulated to that fact. The merits issue is instead whether *Dr. Jefferson herself as a licensed vet* fits into one or more of the categories in the exemption statute, and, if so, whether she established any of those categories with an intent to evade the Act. Tex. Occ. Code § 801.004(1). In addition, the Board certainly did not state that it did not have jurisdiction over *whether* anyone is an owner of an animal; that issue would of course depend on the facts of each case. Furthermore, the evidence at trial was not "uncontroverted" on the issue of whether Dr. Jefferson is exempt. The Board presented documentary evidence at trial which it believed demonstrated that Dr. Jefferson did in fact intend to evade the Act. *See, e.g.,*, RR, Vol. II at 114, 170, 198.

19

Discretionary acts are those which "require the exercise of judgment and personal deliberation." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015). Ministerial acts, by contrast, acts are those "where the law prescribes and defines the duties to be performed with such precision and certainty *as to leave nothing to the exercise of discretion or judgment.*" *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994) (quoting *Rains v. Simpson*, 50 Tex. 495, 1878 WL 9285 at *7 (1878)) (emphasis added).

In determining whether an act is discretionary or ministerial, a court (1) construes the relevant statutory provisions; (2) applies them to the alleged facts; and (3) determines whether the facts constitute acts beyond the official's authority or establish the failure to perform a purely ministerial act. *Tex. Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 701-02 (Tex. App.—Austin 2011, no pet.); *Hendee v. Dewhurst*, 228 S.W.3d 354, 368-369 (Tex. App.—Austin 2007, pet. denied). The application of this analysis plainly shows that Ms. Oria's acts were discretionary and not ministerial.

It was certainly not ultra vires for Ms. Oria and Board Staff to have initiated and conducted investigations and an enforcement action against Dr. Jefferson's alleged actions with regard to the complaints submitted to the Board. Ms. Oria in fact had the express statutory authorization under the Act to do so. For example, the Act directs the Board to adopt rules to "protect the public." Tex. Occ. Code

20

§ 801.151(c)(1). In addition, the Board has other statutory duties as discussed below. Part and parcel of those duties is the determination of whether a licensed veterinarian such as Dr. Jefferson is exempt under § 801.004(1) of the Act.

There can be no question that Ms. Oria's actions in receiving and investigating the complaint against Dr. Jefferson were not ultra vires because they were, by their very nature, discretionary and not ministerial. Complaints against veterinarians are by the very nature fact-specific, and a determination of whether or not they merit further investigation is obviously discretionary. It is also important to note that, as Texas courts have repeatedly held, "[t]he fact that the [agency] might decide 'wrongly' in the eyes of an opposing party does not vitiate the agency's jurisdiction to make an initial decision." *Coastal Habitat Alliance v. Pub. Util. Comm'n of Tex.*, 294 S.W.3d 276, 285 (Tex. App—Austin, 2009, no pet.) (citing *No. Alamo Water Supply Corp. v. Dep't of Health*, 839 S.W.2d 455, 459 (Tex. App.—Austin 1992, writ denied)).

The following clearly demonstrates that actions of the Board, and Ms. Oria on the Board's behalf, were discretionary under the Act and not ultra vires:

- The Board received complaints against Dr. Jefferson in accordance with Tex. Occ. Code §§ 801.203, .204. *See, e.g.*, CR 630-641; 644-652.

- The Board investigated the complaints in accordance with Tex. Occ. Code §§ 801.204, .205. *Id.*

21

- After informal settlement conferences (*see* § 801.2055), the Board's enforcement committee recommended enforcement action pursuant to Tex. Occ. Code § 801.408(c).

- Board staff provided Dr. Jefferson written notices that the Board's enforcement committee had recommended enforcement action, in accordance with Tex. Occ. Code § 801.453 (requiring notice of committee recommendation). *Id.*

- Because Dr. Jefferson did not timely respond to the Starlight notice, the Executive Director referred the matter to SOAH for a hearing. Tex. Occ. Code § 801.455(a)-(b) (when a party fails to respond to a notice of administrative action, "the executive director shall set a hearing and give notice of the hearing to the person" and the hearing shall be held at SOAH).

- In addition, the Board may request and, if necessary, compel by subpoena "the production for inspection or copying of … documents, and other evidence *relevant to an investigation of an alleged violation* of this chapter." Tex. Occ. Code § 801.158(a)(2) (emphasis added).

In light of the foregoing, it is indisputable that the Board and Ms. Oria have authority to accept and investigate complaints. It is equally clear that they have a duty to ensure that complaints are not dismissed without appropriate consideration—all as shown by the statutory authority cited above. Part and parcel of that duty is

22

determining—based on the facts of each case—whether the exemption in § 801.004(1) in fact applies to a Board licensee.[4]

Dr. Jefferson's allegations that Ms. Oria's actions were ultra vires is wholly without merit.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT A MATERIAL ISSUE IN THIS APPEAL.

Dr. Jefferson spends a considerable amount of space in her brief arguing that the exhaustion-of-administrative remedies doctrine is inapplicable to her. Jefferson Br. at 23-40. While the trial court's judgment does refer to Jefferson's failure to exhaust (AR 855), it is nevertheless implicit that the court had determined in the first instance that it lacked subject matter jurisdiction. The grant of the Board's plea was in a preceding sentence and can reasonably be read as a threshold determination that the Board does in fact have exclusive jurisdiction over the exemption determination. *Id.* Moreover, even if the jurisdictional ruling in the judgment could somehow be

---

[4] In addition, the Board must have the ability to investigate complaints against Dr. Jefferson in order to take administrative action in circumstances which in some instances are unrelated to her treatment of animals. For instance, Board may take action for chronic or habitual intoxication, chemical dependency, or addiction to drugs (Tex Occ. Code § 801.402(3)); mental incapacity (Tex. Occ. Code § 801.405); insufficient continuing education (Tex. Occ. Code § 801.307); failure to keep proper records of controlled substances (Tex. Occ. Code § 801.359); engaging in dishonest or illegal practices in, or connected with, the practice of veterinary medicine (Tex. Occ. Code § 801.402(4)); failure to report disease (Tex. Occ. Code § 801.403); and refusal to admit a board representative to inspect client and patient records and business premises during regular business hours (Tex. Occ. Code § 801.402(14)).

read to be based exclusively on Jefferson's failure to exhaust, this Court may nonetheless affirm on any basis. It is well-settled that an appellate court's review of a plea challenging a trial court's jurisdiction is a de novo legal determination. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). That being the case, whether or not Jefferson exhausted her administrative remedies is immaterial. The Board of course believes, as discussed above, that it had exclusive subject matter jurisdiction. If this Court affirms that part of the judgment, the exhaustion question is simply immaterial because Jefferson would obviously have no choice but to submit to the Board's jurisdiction in order to defend her license (which, again, she is already doing). If this Court on the other hand were to reverse the trial court's jurisdictional determination, the trial court then would enter a judgment on remand based on the facts adduced at trial. Either way, exhaustion of administrative remedies is not

material to the Court's determination of what tribunal has subject matter jurisdiction to determine the applicability of the Act's exemption provisions.[5]

## IV. DR. JEFFERSON'S CLAIMS ARE NOT RIPE BECAUSE THE BOARD HAS NOT TAKEN FINAL ACTION.

While the trial court did not specifically mention ripeness as a ground for granting the Board's plea, the Board believes it is an alternative basis for affirming the court's decision since "[r]ipeness 'is a threshold issue that implicates subject matter jurisdiction ... [and] emphasizes the need for a concrete injury for a justiciable claim to be presented.'" *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011), quoting *Patterson v. Planned Parenthood of Houston and Se. Tex., Inc.*, 971 S.W.2d 439 (Tex. 1998). The evaluation of ripeness requires a court to determine whether the facts are sufficiently developed such that an injury has occurred or is likely to occur, rather than being contingent or remote. *Id. See also Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000). A claim is not ripe if it concerns

---

[5] While it is true that the exhaustion requirement does not apply when an agency acts outside the scope of its authority, that is simply not the case here. As discussed above, the Act vests exclusive jurisdiction in the Board to determine the applicability of the exemption in § 801.004(1). Further, Ms. Oria acted wholly within the scope of her discretionary duties in investigating the complaint. As for alleged "irreparable harm," the evidence at trial was *not* uncontroverted as Dr. Jefferson repeatedly asserts. Board counsel in fact cross-examined Dr. Jefferson, and she admitted that she had taken on more animals than a veterinarian could handle, and further that SAPA in fact had received more funding in recent years that allowed her to hire more vets. RR, Vol. II at 178-79. It was in fact Dr. Jefferson herself who over-extended SAPA's resources. This undermines her claim that she is exempt from the exhaustion requirement because she and SAPA would suffer "irreparable harm" solely as the result of the Board's enforcement of the Act.

25

uncertain or contingent future events that may not occur as anticipated or may not occur at all. *Waco Indep. Sch. Dist., supra*, 22 S.W.3d at 852. "By focusing on whether the plaintiff has a concrete injury, the ripeness doctrine allows courts to avoid premature adjudication, and serves the constitutional interests in prohibiting advisory opinions." *Id.*

The ripeness doctrine has been consistently applied by Texas courts to cases such as this. *See Rea v. State*, 297 S.W.3d 379 (Tex. App.—Austin 2009, no pet.) (UDJA claim not ripe since there was no final agency decision); *accord Johnson v. State*, No. 03-08-00667-CV, 2009 WL 2195585 (Tex. App.—Austin July 24, 2009, no pet.) (mem. op.); *Am. Southwest Ins. Managers, Inc. v. Tex. Dep't of Ins.*, No. 03-10-00073-CV, 2010 WL 4053726 at *4 (Tex. App.—Austin Oct. 15, 2010, no pet.); *Tex. Air Control Bd. v. Travis Cnty.*, 502 S.W.2d 213, 215 (Tex. Civ. App.—Austin 1973, no writ).

In this case, Dr. Jefferson's claims are not ripe for review for the simple reason that the factual issues related to the Board's allegations in the pending enforcement proceeding have not been finally determined through a final Board order. The mere fact that the Board has received a complaint and conducted an investigation does not mean that Dr. Jefferson has suffered harm so as to give rise to a cognizable claim in district court. The Board will not issue any final order until the conclusion of Dr. Jefferson's pending contested case hearing at SOAH. While Dr. Jefferson may

face discipline, it is also possible she will not. *Cf.* Tex. Occ. Code § 801.456(a)(2) (following SOAH hearing the Board may determine that no violation occurred). Any judgment by this Court before the issuance of any final order from the Board would be nothing more than an advisory opinion, which Texas courts have consistently held are improper. *See Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.,* 971 S.W.2d 439, 443 (Tex. 1998) (courts are not empowered to give advisory opinions and this extends to cases that are not yet ripe); *Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) (same).

Dr. Jefferson's proffered authority is distinguishable. In the *CenterPoint* case, the court held that the subject utilities' claims were not ripe because they had not demonstrated that they "would suffer hardship if judicial review is withheld until enforcement" of certain ordering paragraphs in Railroad Commission orders. *R.R. Comm'n of Tex. v. CenterPoint Energy Res. Corp.*, No. 03-13-00533-CV, 2014 WL 4058727, at *4 (Tex. App.—Austin Aug. 14, 2014, no pet.) (mem. op.). The court noted that hardship is shown when the applicable statute requires "an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Id.*, quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967). On this point, Dr. Jefferson claims that the "uncontroverted" evidence at trial shows that her compliance with the Act and Board rules "would effectively destroy San Antonio Pets Alive's lifesaving efforts." Jefferson Br. at 42. To the

27

contrary, she has been free to operate SAPA throughout the course of this case and the underlying administrative proceeding. Dr. Jefferson is presuming an outcome that has not yet occurred. And again, she has already prevailed at SOAH on the main issue, i.e., whether or not she is exempt from the Act. And she will have the right to judicial review once the Board issues a final order on all of the issues. Tex. Gov't Code § 2001.171.

It should also be noted that the *CenterPoint* case involved provisions in Railroad Commission ordering paragraphs with established penalties for non-compliance. The Board submits that being subject to *final orders* (with penalties) is not the same as being subject to the statutory administrative process governing licensees, and where no penalties have been imposed (and where it's possible than none will be).

Dr. Jefferson's position is no different than that of any other occupational licensee facing discipline. Any licensee can claim that he or she would suffer "an immediate and significant change in (his or her) conduct of their affairs" simply by having to respond to a complaint and, if necessary, participating in a contested case hearing. However, an occupational license is a privilege and not a right, and any person requesting licensure does so with the full knowledge of the provisions in the respective enabling acts. Vets such as Dr. Jefferson are or should be fully aware of the provisions in the Act, including those pertaining to the Board's jurisdiction to

28

investigate and, if necessary, prosecute complaints. That includes being aware of the possibility of enforcement when she established SAPA. Allowing a licensee to escape the jurisdiction of its regulatory agency simply by claiming harm would create an absurd result which the Legislature never intended.

## V. THE TRIAL COURT CORRECTLY DENIED DR. JEFFERSON'S REUEST FOR MANDAMUS RELIEF.

It is well-settled that mandamus relief will lie only to compel a governmental official to perform a ministerial act, one for which "the law *clearly* spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Save Our Springs Coal.*, 828 S.W.2d at 342-43 (emphasis added) (holding that mandamus would not lie where the city had discretion to act). Here, Dr. Jefferson has not and cannot show that the Act "clearly spells out" any requirement that the Board simply ignore a complaint when a vet simply *claims* to be exempt.

Further, mandamus is an extraordinary remedy and is available only in limited circumstances. *City of San Antonio ex rel. City Serv. Pub. Bd. v. Bastrop Cent. Appraisal Dist.*, 275 S.W.3d 919, 922-23 (Tex. App.—Austin 2009 pet. dism'd). The remedy is only appropriate to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy at law. *In re Columbia Med. Ctr. of Las Colinas, L.P.*, 290 S.W.3d 204, 207 (Tex. 2009).

To use Dr. Jefferson's quote from *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124 (Tex. 2004), "[A] careful balance of jurisprudential considerations" demonstrates that she in fact has an adequate remedy at law. The court in *Prudential* provided guidance on this point:

> *Mandamus review of significant rulings in exceptional cases* may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings. *An appellate remedy is "adequate" when any benefits to mandamus review are outweighed by the detriments.* When the benefits outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate.

148 S.W.3d at 135-136 (emphasis added).

None of the considerations in the *Prudential* case are present here. The trial court's ruling that it lacked jurisdiction is not a significant ruling in an exceptional case. It is in fact common and not "exceptional" that the Board reviews, investigates and prosecute complaints under its enabling act. In addition, the trial court's grant of the Board's plea was not such a "significant ruling" that would support mandamus relief. It is not uncommon for governmental agencies and/or their officials to challenge a trial court's jurisdiction over a prematurely-filed lawsuit and for courts to issue rulings on subject matter jurisdiction.

30

Furthermore, the benefits of mandamus relief are indeed outweighed by the detriments. *Id.* Judicial interference with the Board's investigation and prosecution of complaints would have negatively impacted its ability to protect the public by insuring that a vet who claims to be exempt from the Act is in fact correct. In contrast, Dr. Jefferson's adequate remedy at law, i.e., judicial review of a final Board order, is in compliance with the Legislature's intent as set forth in the Act and the APA. Agencies such as the Board must have the ability in the first instance to exercise jurisdiction over their licensees. If courts were allowed to intervene in that process based simply on one vet's claim to be exempt, those entire statutory schemes would be turned on their head.

Finally, Dr. Jefferson's entire mandamus argument is based on the flawed premised that Ms. Oria acted ultra vires. She in fact did not, as shown above.

Dr. Jefferson's mandamus claim is wholly without merit, and should be dismissed for lack of jurisdiction.

## VI. THE TRIAL COURT'S DECLARATIONS REGARDING OTHER LAWS OUTSIDE THE ACT WERE BEYOND THE SCOPE OF RELIEF REQUESTED BY THE PARTIES.

The Board agrees that the trial court's declarations regarding its authority to enforce other laws and its directive that the Board must enforce those laws "with proper and due regard for the owner exemption" was beyond the scope of relief requested by the parties. CR 856. The Board particularly disagrees with the trial

court's finding that it must take into account the owner exemption in enforcing other laws. *Id.* The other laws—such as those pertaining to the handling of drugs, cooperating with Board investigations, and continuing education—are independent provisions that pertain to all veterinarians regardless of whether they may be exempt from the Act. This is because they have nothing to do with the "treatment or care of an animal in any manner" as set forth in the exemption. Tex. Occ. Code § 801.004(1).[6]

## CONCLUSION AND PRAYER

For the reasons discussed above, the Board respectfully requests this Court to affirm the trial court's judgment granting its plea to the jurisdiction.

The Board prays for such other and further relief as this Court may deem just and equitable.

Dated: September 11, 2015.

---

[6] The Board does not waive its right to argue in an appropriate forum that the other laws referred to in the trial court's judgment in fact do apply notwithstanding the applicability of the exemption in § 801.004(1).

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Division Chief, Administrative Law Division

*/s/ Ted A. Ross*
Ted A. Ross
Assistant Attorney General
State Bar No. 24008890
OFFICE OF THE TEXAS ATTORNEY GENERAL
ADMINISTRATIVE LAW DIVISION
P. O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 475-4191
Facsimile: (512) 457-4674
Email: ted.ross@texasattorneygeneral.gov

*Attorneys for Appellants/Cross-Appellees Texas State Board of Veterinary Medical Examiners, and Nicole Oria*

33

**CERTIFICATE OF COMPLIANCE**

I hereby certify compliance with Texas Rules of Appellate Procedure 9 and that there are 7,282 words in this document. Microsoft Word was used to prepare this filing and calculate the number of words in it.

*/s/ Ted A. Ross*
Ted A. Ross
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that, in compliance with Rule 9.5 of the Texas Rules of Appellate Procedure, a true and correct copy of the above and foregoing document has been served on the following on this the **11th day of September 2015:**

David F. Brown                                    *Via: **Electronic Service and e-mail***
dbrown@ebblaw.com
David P. Blanke
dblanke@ebblaw.com
Zeke DeRose III
zderose@ebblaw.com
111 Congress Avenue, 28th Floor
Austin, Texas 78701

Ryan Clinton
rdclinton@dgclaw.com
Davis, Gerald & Cremer, P.C.
111 Congress Avenue, Suite 1660
Austin, Texas 78701
*Attorneys for Ellen Jefferson, D.V.M.*

*/s/ Ted A. Ross*
Ted A. Ross
Assistant Attorney General